UNITED STATES of America, Appellee,

v.

Felisardo CASARES–CARDENAS,
Appellant.

UNITED STATES of America, Appellee,

v.

Guillermo OSORIO–HIGUERA,
Appellant.

Nos. 93–1855, 93–1856.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 14, 1993.

Decided Jan. 27, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied March 11, 1994.

Manuel Guerrero, St. Paul, MN, argued, for Cardenas.

Virginia G. Villa, Minneapolis, MN, argued, for Higuera.

Jon M. Hopeman, Minneapolis, MN, argued, for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, HEANEY and ROSS, Senior Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Two defendants, Felisardo Casares–Cardenas ("Casares") and Guillermo Osorio–Higuera ("Osorio"), appeal from convictions for violating federal drug-trafficking laws. Casares asserts that the district court[1] erred in refusing to consider his untimely motions to suppress evidence, to dismiss charges, and to sever his case from Osorio's. Osorio claims that the search of a car performed two months after its seizure violated the Constitution, and that testimony concerning his entry into the United States with a person bearing the same name as his codefendant was improperly admitted. Both defendants also assert errors in their sentencing hear-

1. The HONORABLE DAVID S. DOTY, District Judge, United States Court for the District of Minnesota.

ings. We find that the district court committed no error, and therefore affirm both convictions.

## I.

Some four years ago, Osorio was captured while attempting to enter the United States illegally in the company of a woman named Celia Casares who was also from his native province of Sinaloa. The United States Immigration Service deported him to Mexico. At some point thereafter, Osorio successfully evaded border officials and reentered the United States illegally. He later met a woman named Jennifer Guerra, and moved into her house. An occasional occupant of the same house was Guerra's mother, Rosalina Lopez ("Lopez"), who was romantically involved with Casares. Lopez invested $10,000 in the La Casuela restaurant in St. Paul, Minnesota, owned by Orlando Rodriguez. La Casuela served for a few months as a place of employment for both Casares and Osorio.

The Minnesota Bureau of Criminal Apprehension ("the BCA") had made Casares and the La Casuela restaurant the focus of a continuing investigation into the sale of black tar heroin in the St. Paul area. In furtherance of this investigation, the BCA engaged the assistance of Richard Perron, a heroin-addicted drug dealer, who had been previously arrested after an undercover agent purchased black tar heroin from him. Perron had been followed after another agent had witnessed him engage in a transaction earlier that day with Osorio. After being released, Perron agreed to cooperate with the BCA in exchange for cash.

In February of 1992, Rosalina Lopez arranged to borrow a car from Casares's brother for a trip from California to St. Paul with Osorio and another relative of Casares. While they were en route, a Utah Highway Patrol officer stopped them for irregular driving. The officer checked the identification supplied by Osorio, who was driving the car, and learned that Osorio was required to carry a visa. Osorio could not produce the necessary documentation when asked. The officer's suspicions were aroused when he learned that no one in the car owned it or seemed to know who did, so he asked Lopez for permission to search the car and trunk. Lopez consented, and the officer discovered a kilogram of cocaine and some methamphetamine in the trunk of the car. He promptly arrested all three occupants.

The vehicle was taken to a police impound lot in Utah and was held there for several months. Upon a tip from an inmate at the jail who claimed to have overheard a conversation to the effect that the car contained yet more drugs, the officer searched the car again in April. After dismantling the air-conditioning duct system, he discovered 174 grams of black tar heroin.

At the behest of the BCA, Perron thereafter approached Casares about returning to service as a drug dealer. Perron made three undercover purchases of black tar heroin from Casares, one of which the BCA photographed. Casares was then arrested and charged with conspiracy to possess heroin with intent to distribute it. A search of his person uncovered 17.3 grams of cocaine. The execution of search warrants produced 23.4 grams of black tar heroin from his garage, and his apartment yielded several $1000 money orders bearing the names of Osorio, Lopez, and others.

Osorio was indicted for being an alien illegally present in the United States after deportation. Both Osorio and Casares were indicted for conspiracy to possess with intent to distribute cocaine. Casares was also indicted with possession with intent to distribute cocaine. On September 21, 1992, the district court directed the attorneys appearing for both Casares and Osorio to file pretrial motions by September 25, and directed Casares's attorney, who was licensed in Utah, to retain local counsel. Casares's attorney hired local counsel on September 22, and then filed a Motion to Extend Time for Filing of Pretrial Motions on September 28, three days after the deadline set for filing them.

On September 29, 1992, a magistrate judge denied Casares's Motion to Extend Time, and held an evidentiary hearing on pretrial motions that Osorio filed. On September 30, 1992, Casares's Utah attorney mailed six pre-

trial motions which were filed on October 5. The magistrate judge issued his report recommending that Osorio's motions, including the motion to suppress, be denied. Both Casares and Osorio filed objections to the report, with Casares objecting to the fact that his pretrial motions were not considered or ruled upon. The district court adopted the magistrate's Report and Recommendation after hearing oral arguments.

A jury trial resulted in guilty verdicts against both defendants on all counts. Osorio was sentenced to concurrent prison terms of .78 months and 24 months on the conspiracy and immigration counts respectively. Casares was sentenced to concurrent prison terms of 121 months each on the conspiracy and possession charges. This appeal resulted.

## II.

The defendants first argue that the district court erred in its treatment of their various pretrial motions. Casares asserts that the court abused its discretion in refusing to consider his untimely motions. Osorio claims that the court committed error by denying his motion to suppress the evidence produced by the search of the vehicle two months after Osorio's arrest in Utah.

### A.

 Casares is correct when he asserts that we review the district court's refusal to consider his untimely pretrial motions under an abuse of discretion standard. *United States v. Garrett*, 961 F.2d 743, 748 (8th Cir.1992). He is, however, mistaken that this standard presents a surmountable hurdle in this instance. The district court has discretion to refuse to consider untimely pretrial motions where, as here, no good cause is offered for late submission. *Id.* at 748. We note, moreover, that the refusal to consider the untimely motions did not leave Casares entirely defenseless, because the magistrate judge generously considered Osorio's motions as having been entered on Casares's behalf as well.

### B.

 Osorio's objection to the treatment of his motion to suppress poses a more difficult question, namely, whether the Fourth Amendment permits a police search of an automobile upon an informant's tip two months after the vehicle was taken into custody. This question, however, appears more complex at first glance than the applicable legal principles actually warrant. We believe that the proper rule is that, once a reasonable basis for search of an automobile has been established, the search need not be completed on the shoulder of the road. Since the Utah highway patrol officer who searched the car had previously received consent to do so, completion of that search at a later date was not unreasonable within the meaning of the fourth amendment.

 Osorio contends that the search in question exceeded the scope of the consent given by Lopez. It is true, of course, that a consensual search may not legally exceed the scope of the consent supporting it. *Walter v. United States*, 447 U.S. 649, 656–57, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980). But a warrantless search of an automobile, predicated on consent, may be expanded beyond the scope of the consent when it yields a basis for a reasonable articulable suspicion that additional contraband may be found in parts of the car not included in the consent. *United States v. Chaidez*, 906 F.2d 377, 383–84 (8th Cir.1990), provides an instructive example. In that case, a state highway patrol officer obtained consent to search the trunk of a vehicle that he had stopped for speeding. While searching the trunk of the car, the officer noticed irregularities about the positioning of the rear passenger seat that abutted the trunk of the car. *Id.* at 379. We upheld the conviction for cocaine found after the officer had removed the rear seat at the scene and interior side panels after the car was taken into police custody. *Id.* at 385. We reasoned that once the consensual search produced a reasonable articulable suspicion that the car contained contraband, the officer had probable cause to search the entire vehicle. *Id. See also Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

We believe that the case before us falls squarely within the reasoning of *Chaidez*. Here, the officer found, pursuant to and within the scope of the consent obtained, hard evidence of narcotics possession. The discovery of the drugs in the trunk of the car gave rise to probable cause for the officer to search the entire car. The complete search of the car need not have occurred at curbside, however. After Lopez gave the Utah highway patrol officer consent to conduct a full search of the vehicle, he was confronted with two choices: he could have conducted a limited search, and, upon finding some of the narcotics, undertaken a complete disassembly of the car right on the shoulder of the road; or he might simply, as was the case here, conduct a complete search at a later time while the vehicle remained in police custody. The second alternative seems to us to be more palatable, because once the basis for the warrantless search has been established, requiring it to be done immediately or within some narrow time limit might result in a more intrusive search than either necessary or desirable in a free society.

The defendant Osorio asserts that the tip from the inmate claiming to have overheard a conversation concerning additional drugs in the car serves as an insufficient basis for establishing probable cause for the delayed search. That may or may not be true, but we believe that the informant's tip is immaterial to the appropriate Fourth Amendment inquiry in this case. The informant's tip served, not as a basis for probable cause, but simply as an inspiration to the officer to conduct a more complete search pursuant to a permission granted at the scene of the initial search. In this respect, the information operated the same way as a conversation with another officer concerning an unrelated arrest in which drugs were discovered in the air conditioning vents. The same search might have ensued, but only because the officer conducting the search was inspired to be more thorough than he had chosen to be earlier. Accordingly, we hold that the search conducted by the Utah police officer two months after the arrests (but while the automobile was still in the custody of the police) was not unreasonable within the meaning of the Fourth Amendment.

## III.

Defendant Osorio also contends that the evidence concerning his illegal entry into the United States with a woman named Casares was irrelevant.

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as evidence that has "any tendency to make the existence of any fact that is of consequence ... more probable or less probable than it would be without the evidence." Relevance is established by any showing, however slight, that makes it more or less likely that the defendant committed the crime in question. *United States v. Federico*, 658 F.2d 1337 (9th Cir.1981). Rule 403 allows the court the discretion to prohibit the admission of evidence if its probative value is "substantially outweighed by the danger of unfair prejudice." This determination by the trial court is given great deference. *United States v. Boykin*, 679 F.2d 1240 (1982).

In the present case, defendant Osorio has failed to persuade us that the evidence was not relevant. He does not dispute the fact that his prior capture and deportation by immigration officials is central to one of the offenses charged, namely being present illegally in the United States after deportation. He takes issue, rather, with the fact that the government was permitted to introduce the name of the woman with whom he was captured. It is just possible, however, that the woman with whom Osorio illegally entered the United States was yet another relation of his codefendant. This fact might make more probable some relationship with co-defendant Casares some six months before the conspiracy at issue. While this evidence fails to establish such a link conclusively, conclusiveness is not the standard by which one makes a determination of relevance.

Defendant Osorio fails, furthermore, to show how admission of this evidence, even if irrelevant, prejudiced his case. The relationship between him and Casares was established by the testimony of Perron and the BCA agent who witnessed Perron buying drugs from Osorio. The link between them was also strengthened by the money order

bearing Osorio's name found in Casares's apartment. The evidence concerning the fact that Osorio was arrested in Utah driving a car registered to Casares's brother, with another of Casares's relatives and Casares's lover as passengers, tends though to support the inference that some connection existed between these two defendants. Claims of prejudice under these circumstances amount to little more than a charge of "piling on." Accordingly, we find no prejudice by the admission of the evidence concerning Osorio's 1989 capture by immigration authorities.

## IV.

Both Casares and Osorio object to the district court's application of the federal sentencing guidelines. Casares asserts that the district court erred in calculating his base offense level and by adjusting his sentence upward for obstruction of justice. Osorio contends that he deserved a two-point reduction for being a minor participant in the conspiracy. We deal with each defendant's objections in turn.

## A.

■ Casares objects to the inclusion of the kilogram of cocaine and seven ounces of heroin seized from the car stopped in Utah in the calculation of his base offense level. He also takes issue with the district court's upward adjustment for giving false testimony. We review applications of the sentencing guidelines *de novo*. Factual questions regarding sentencing decisions are, of course, reviewed under a clearly erroneous standard.

■ A court may base a defendant's sentence on drugs found in the possession of his co-conspirators if it "finds by a preponderance of the evidence that [the co-conspirator's] activities were (1) in furtherance of the conspiracy and (2) were known to [the defendant] or were reasonably foreseeable to [the defendant]." *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir.1992). Actions are reasonably foreseeable to a defendant when they fall within the scope of the agreement between the defendant and the co-conspirators. *Id.*

Application of the sentencing guidelines is straightforward in the present case. Inclu-

sion of the narcotics discovered in the car in Utah is correct if the preponderance of the evidence shows that Casares participated in the conspiracy to transport them. This threshold was exceeded when the jury convicted Casares of the conspiracy. The defendant fails to demonstrate how the district court erred in finding by a preponderance of the evidence precisely what a jury had already found beyond a reasonable doubt.

■ Casares makes much of the fact that he was incarcerated while the car was stopped in Utah. Reliance on this argument is misplaced. Evidence at trial established that Casares, from jail, helped procure the car in which the narcotics were transported, and there was no evidence that he had withdrawn from the conspiracy prior to the seizure of the car. A defendant may be guilty of conspiracy even when he is incarcerated while the purpose of the conspiracy is being effected. *United States v. Lee*, 886 F.2d 998, 1003 (8th Cir.1989), *cert. denied*, 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990). Casares was found guilty of conspiracy in accordance with this rule and despite the fact on which it is premised. We therefore affirm the district court's determination of Casares's base offense level.

■ Casares argues next that the district court erred by increasing his offense level by two levels for obstructing justice. Sentencing Guideline § 3C1.1 provides:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Application Note 3(b) to § 3C1.1 provides that committing perjury constitutes obstruction of justice.

The district court found that the defendant perjured himself on the witness stand at trial. The court noted that Casares denied being in Minnesota during April, 1992, even though his employment records indicate otherwise. The court also made reference to Casares's denial of involvement with the drugs seized in Utah. These findings are not clearly erroneous and they support an upward adjustment for obstruction of justice.

Accordingly we affirm the district court's application of the sentencing guidelines with respect to defendant Casares.

### B.

Osorio finds fault with the district court's application of the federal sentencing guidelines with respect to his case as well. Specifically, Osorio cites the failure to accord him "minor role" status with its concomitant two-point offense-level reduction. The decision of a district court as to whether a defendant played a minor role in a criminal enterprise is a factual finding which may not be reversed unless clearly erroneous. *United States v. Phillippi*, 911 F.2d 149, 151–152 (8th Cir.1990).

Osorio fails to prevail on the clearly erroneous standard in this case. He was convicted of conspiracy to transport narcotics. The district court found that he was a "transporter" because he was arrested while driving the car in which the drugs were being carried. In this role he was integral to the advancement of the purpose of the conspiracy. He was sentenced accordingly and we therefore affirm.

### V.

For the reasons indicated, we affirm the trial court in all respects.