UNITED STATES of America, Plaintiff,

v.

Shawn C. TAYLOR, Defendant.

No. 96–CR–20010–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Feb. 11, 1997.

Michael J. Hluchaniuk, Assistant U.S. Attorney, Bay City, MI, for Plaintiff.

Wallace Capel, Jr., Federal Defender, Flint, MI, for Defendant.

*ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS THE SEARCH OF HIS VEHICLE AND REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

CLELAND, District Judge.

## I. Background

The preliminary organization of this matter, including motions to suppress evidence, was referred under 28 U.S.C. § 636(b)(1)(B) and Appendix C of the Local Court Rules, to United States Magistrate Judge Charles E. Binder. The magistrate judge issued a Report and Recommendation ("Report") suggesting that defendant's motion to suppress certain evidence should be granted. The government filed timely objections pursuant to 28 U.S.C. § 636(b), to which the defendant has responded. In this opinion, the court rejects the recommendation of the magistrate and denies the defendant's motion to suppress evidence.

On February 28, 1996, defendant Shawn Taylor was traveling on the Ohio Turnpike through Toledo, Ohio, in a 1986 Chevrolet Suburban of which he was the lawful owner. Inside the Suburban were three passengers (although they were difficult to discern since the windows of the vehicle were darkened by tinting material to an extent that was illegal under Ohio law).

At approximately 11:05 a.m. Ohio Highway Patrol Trooper Richard Unger stopped the vehicle after seeing it changing lanes without using a signal. (Transcript of the September 18, 1996, Hearing Before Magistrate Judge Binder ["Tr."], 8). Officer Unger testified the circumstances of the stop were "making him nervous" because (among other things) the front seat passenger was not looking at him as he stood at the passenger-side door but was alternately peering at the floorboards and then out the front window; also the Trooper could not tell exactly how many other people were inside the Suburban, or what they were doing, because the windows were heavily tinted. (Tr. 11). After a brief encounter at the side of the Suburban, Taylor was placed in the back seat of the patrol car (from which a person may not emerge until the door is opened from the outside), for review of his paper work (license, registration, etc.).

Within minutes of the stop, a second officer arrived at the scene, Trooper Robert Stevens. While Unger was still engaged with Taylor inside the police car checking his operator's permit, Stevens first walked up to the Suburban, and then brought out and used his trained German Shepherd dog to sniff for drugs around the outside perimeter of the vehicle. Stevens at that point knew nothing about Unger's nervousness or observations of the front-seat passenger. (Tr. 39). Stevens was, however, aware that there were three passengers in the vehicle. (Tr. 63). The dog quickly "alerted," indicating the presence of drugs inside the Suburban at 11:09 a.m.; by this time, only four minutes had elapsed from when the vehicle had been pulled over, and Unger was engaged in a computer "records check" of Taylor. The officers then ordered the passengers out of the vehicle, frisked them, placed them in patrol cars and searched Taylor's vehicle. The Troopers testified that this was a "sweep"—a cursory search—intended to see if there were any weapons within reach. Neither weapons nor drugs were found during this "sweep." Officers then drove the Suburban about a mile down the highway to a maintenance building where a more thorough search was conducted. According to the magistrate judge:

> ... a search was conducted of the vehicle and among other things, a safe was found, and on more than one occasion, the Defendant was apparently asked to open the safe, and he declined. The search also revealed a marijuana pipe with residue, which was found in a nylon bag located within the Suburban; transcript page 19.

> There was a marijuana joint, or marijuana cigarette found underneath the seat, which had been occupied by a female subject; transcript at page 20. A—a long brown box that was wrapped in paper was

found, and it was found to contain a rifle case; transcript page 21.

After opening the rifle case, a semi-automatic rifle was found, along with a loaded clip, although the clip was not attached to the magazine of the gun; transcript at page 21.

(Tr., 120–21). Also found during the search of the vehicle were receipts from a storage shed, and information about Taylor's residence. Ultimately, without Taylor's consent, the safe was forced open revealing the drugs that are the principal focus of this motion to suppress.

On August 16, 1996, Taylor filed a motion to suppress the fruits of the search of his vehicle. Oral argument was heard on September 4, 1996, and again on September 18, 1996, before the magistrate judge. He recommended that the motion to suppress the search of the vehicle be granted, suggesting that once the officers, at the side of the road, had discovered no illegal activity "over and above the traffic matter" itself, the continued detention of the defendant and his vehicle became improper and therefore the search of the vehicle had violated Taylor's constitutional rights. The magistrate judge relied principally on *United States v. Buchanon*, 72 F.3d 1217 (6th Cir.1995), also a case involving a drug-sniffing dog.

On January 9, 1996, this court held oral argument on the government's objections. For the reasons which follow, the magistrate judge's recommendation is REJECTED and Taylor's motion to suppress the search of his vehicle DENIED.

## II. Standard

The filing of timely objections requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). See *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). This *de novo* review, in turn, requires this court to re-examine all the relevant evidence previously reviewed by the magistrate to determine whether the recommendation should be accepted, rejected or modified in whole or in part. 28 USC § 636(b)(1). The court may "receive further evidence" if desired. *Id.*

The Fourth Amendment of the United States Constitution protects

[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause supported by an oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Court established the "vehicle exception" to the warrant requirement. The Court in *Carroll* held that, in light of the exigency arising out of the possible disappearance of a vehicle, a warrantless search of an automobile, based upon probable cause to believe that it contained evidence of crime, did not contravene the Warrant Clause of the Fourteenth Amendment. *Id.* at 158–59, 45 S.Ct. at 286–87.

In *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court found that where police have probable cause to believe a vehicle contains contraband, they may search the entire vehicle and containers located within it. Under *Chambers v. Maroney*, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1975), if the police have probable cause to justify a warrantless search of a vehicle the search may be either immediate or delayed.

## III. Discussion

### 1. The Traffic Stop Was Legitimate

■ Taylor does not contest that the police had probable cause to stop his vehicle. Indeed, in *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993), the court ruled that "so long as the officer has probable cause to believe the traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." See also, *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (expressly adopting the same test for determining reasonableness of an automobile stop). According-

ly, Unger's observation that Taylor did not signal when he made a lane change provided clear probable cause to determine a traffic violation had occurred and a proper justification for stopping the vehicle.[1]

### 2. The Detention of the Defendant and Passengers was Lawful

▮ In analyzing the reasonableness of detention a court will consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the inference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968). A temporary detention is proper if it is supported by a specific fact which gives rise to a reasonable inference of criminal activity. *Id.* Here, Unger determined to detain Taylor (and, necessarily, the vehicle he was driving along with its passengers and contents) to check his criminal and driving record, and to decide whether to issue a violation notice. (Tr. 12–13). This kind of detention is normal in traffic stops, and is considered proper so long as the detention is reasonable in duration. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995) (a motorist can be lawfully detained in a police car until the purpose of the initial traffic stop is completed); *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir.1996) ("[d]etention in a police car does not automatically constitute an arrest"); *United States v. Rodriguez*, 831 F.2d 162, 166 (7th Cir.1987) (detention in police car for several minutes is merely a normal part of police procedure and does not constitute custodial arrest).

### 3. The Use of a Dog During a Routine Traffic Stop is Not a "Search"

▮ Both sides agree that a dog "alert" is a fact which gives rise to an inference of criminal activity in a case such as this. The defendant seems to contend, however, that it is fundamentally improper to do something that may appear to a reasonable vehicle pas-

senger to be the commencement of a drug investigation—e.g., use of a drug sniffing dog—without specific and articulable cause for so doing. (Defendant's Response to the Government's Objections to the Magistrate Judge's Report and Recommendation on Defendant's Motion to Suppress, 2). The defendant is, in the court's view, attempting to apply the concept of custody to the roadside incidents of this case. In analyzing whether a person is in custody (for example to determine whether she should have been given Miranda warnings) the reasonable apprehensions of the person are considered: would a reasonable person have thought herself free to leave or perceived herself under arrest? Whether the police have their guns drawn, or have acted in some other way to indicate that the person is restrained, or even, perhaps, whether a dog is brought out on a leash, could be incidents of detention that would inform a person as to her custody status. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (citing actions which would indicate to a person he is not free to walk away); *U.S. v. Buchanon*, 72 F.3d 1217, 1225 (6th Cir.1995) (the very act of bringing out a dog to sniff for drugs tells a reasonable person "we are investigating you for drugs and you may not move these vehicles until we are through").

Reliance upon *Buchanon*, however, does not well serve the defendant's interests here because, in *Buchanon*, the Sixth Circuit was faced with roadside circumstances which, although reminiscent of those in this case, began with a police encounter entirely different. In that case, there was no hint of wrongdoing by those in the vehicle and no traffic stop was involved—instead, a vehicle, apparently disabled at the side of the road, prompted an officer to pull over to inquire and offer assistance. 72 F.3d at 1219. Despite the absence of any violation, the officer caused the vehicle to remain where it was, and called another police unit to carry out a dog sniff investigation on it. *Id.* There was no indication that the troopers asked permission or that anyone in the vehicle consented

---

1. In fact, the lane-change violation notice was issued and Taylor pleaded guilty in Ohio court. (Tr. 57–58). While the vehicle's windows were illegally tinted, the trooper testified that it was his practice to not issue a citation for this Ohio violation if the vehicle was registered outside Ohio, as was Taylor's.

to this procedure. *Id.* There, as here, the dog "alerted" from outside the vehicle, and the troopers subsequently performed a pat down search of the individuals. Finding no guns or contraband on their persons, the troopers performed a warrantless search of the vehicle. In *Buchanon,* the court stated that:

> [t]he troopers testified that they did not observe any illegal activity prior to the dog's alert and that they relied exclusively on the dog's alert in concluding that probable cause existed to search the vehicle.

72 F.3d at 1220 (6th Cir.1995).

A primary issue addressed by *Buchanon* was whether or not, under those circumstances, the use of a dog constituted a search. The Sixth Circuit quoted the *Carroll* court:

> Those lawfully within the [United States], entitled to use public highways, have a right to free passage without interruption or search unless there is known to a competent official ... probable cause for believing that the their vehicles are carrying contraband.

267 U.S. at 154, 45 S.Ct. at 285 (1925). The *Buchanon* court found that, at least by the time the dog was brought out, a seizure had occurred because the dog's presence clearly communicated to the suspects that a drug investigation was underway. The Sixth Circuit held that:

> The very act of bringing Fando out to sniff the vehicles tells a reasonable person 'we are investigating you for drugs and you may not move these vehicles until we are through.'

73 F.3d at 1225.

The Sixth Circuit concluded that using a dog in this manner was unlawful under *Terry v. Ohio,* and its progeny, because "[t]he troopers did not have reasonable articulable suspicion for seizing the defendants and the truck for a limited investigatory purpose." 72 F.3d at 1226 (citation omitted). The court further stated that:

> The Fourth Amendment protects a person's freedom to travel and freedom to enjoy his or her personal property without interference from the police absent consent

or reasonable suspicion or probable cause that the crime has been, will be, or is being committed. Trooper Meadows testified that as part of his drug interdiction unit's investigatory method, he 'automatically' uses Fando to perform a narcotics sniff on every vehicle his unit stops.

72 F.3d at 1228.

The court went on:

> [s]o long as [an officer] uses [a dog] on an unattended vehicle or unattended personal property, or *so long as the canine sniff is performed on legally seized personal property pursuant to a legal seizure* of a person, the [dog] sniff would not be unconstitutional. The troopers' actions here, however, are unconstitutional and unconscionable. If law enforcement officers are permitted to illegally seize persons in order to uncover evidence of criminal conduct, then the Fourth Amendment right of persons in this country to go about their business free from baseless interference from the police has been extinguished. Thus, we hold that a canine narcotics sniff made possible by an unconstitutional *Terry* seizure violates the Fourth Amendment.

72 F.3d at 1227 (emphasis added).

Based primarily on the holding in *Buchanon,* the magistrate judge suggested that

> Once the officers found no illegal action or evidence of illegality, over and above the traffic matter, the continued detention of the Defendants, including the use of the drug dog, is—unconstitutional. Once the purpose of the intentional traffic stop ended, I suggest that the officers' actions in this case, under *Mesa* and *Buchanon,* amounted to an illegal Terry stop. And as in *Buchanon,* I suggest that the fruits of the narcotics sniff made possible by this illegal search must be suppressed.

There are obvious and substantial differences in the timing of the events: in *Buchanon,* the officer had concluded his "render assistance" work, and detention of the subjects for further independent investigation was without cause. In Taylor's case, the legitimate traffic work had not been concluded: it was only beginning when the dog was

brought on the scene. Thus, in suggesting that "... the officers [had] found no illegal action or evidence of illegality, over and above the traffic matter," the magistrate judge's line of reasoning is not sustainable. There is no need to find "illegal action or evidence of illegality" unless there is also a need to justify continued detention of a vehicle. Although it is true that no independent "cause" or "suspicion" of illegality was testified to herein, none was needed because there was no undue or extended detention. There was, in fact, not only no *undue* detention, there was no detention at all other than that which was inextricably tied to the legitimate traffic stop and its aftermath. Because the magistrate judge's conclusion is founded upon the "*continued* detention of the defendants, including the use of the drug dog," and because he found there that "the purpose of the intentional traffic stop [had] ended," the suggestion of unconstitutionality is rejected.

Due to the substantial differences between the two cases, the court concludes that the *Buchanon* result does not properly apply to the facts of this case. In fact, it is instructive that the *Buchanon* court itself noted that "so long as the canine sniff is performed on *legally seized* personal property pursuant to a legal seizure of a person, the [dog] sniff would not be unconstitutional." 72 F.3d at 1228 (citations omitted). Here, assuming that a traffic stop constitutes a "seizure" of property at all, the sniff was indeed "performed on legally seized personal property" and is, under the *Buchanon* analysis, sustainable.

More fundamentally, the Court in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), addressed the use of drug sniffing dogs. In *Place* the Court found that the use of a drug sniffing dog did not itself constitute unreasonable search and seizure for purposes of the Fourth Amendment. The court reasoned that a canine sniff is not intrusive because a dog will only "alert" to the presence of drugs and not much else:

the sniff discloses only the absence or presence of narcotics, a contraband item.

Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also insures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.

In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here—exposure of respondent's luggage, which was located in a public place, to a trained canine—did constitute a "search" within the meaning of the Fourth Amendment.

462 U.S. at 707, 103 S.Ct. at 2644–45.

In *Merrett v. Moore*, 58 F.3d 1547 (11th Cir.1995), the Eleventh Circuit ruled that the use of dogs to sniff car perimeters during a license check, even without individualized reasonable suspicion, did not constitute an unconstitutional search. The court in *Merrett* held that

Here, the dogs sniffed the exterior of the plaintiffs' vehicles, they did not invade plaintiffs' homes or their bodily integrity. The sniffs occurred while plaintiffs were stopped in a public place; and because the sniffs occurred during the license check, plaintiffs were not delayed to conduct the sniffs. The sniffs also alerted the officers only to the potential presence of drugs; they did not expose the contents of plaintiffs' vehicles to public view. (And, the privacy interest in possessing illegal drugs is not one that society recognizes as reasonable. *United States v. Jacobsen*, 466 U.S. 109, 121–25, 104 S.Ct. 1652, 1661–62, 80 L.Ed.2d 85 (1984)).

58 F.3d at 1553.[2]

In the instant case, there was no close approach made to any person nor was a sniff

---

**2.** The court notes the possibility of a different result in the Sixth Circuit due to some of the language in *Buchanon*, but even this is not a foregone conclusion. The *Buchanon* court, as

conducted on any part of the body of any passenger, and at that time no entry was made by either investigator or animal into the interior of the vehicle. In fact, a door that had been opened by a passenger was ordered to be shut by Trooper Stevens before the sniff commenced. (Tr. 64) Under these facts, the use of this dog to sniff the air adjacent to the perimeter of this vehicle, as it stood lawfully—and briefly—detained at the side of the road, did not constitute a search within the meaning of the Fourth Amendment.

### 4. Probable Cause for an Initial Search Based on A Dog's "Alert"

■ An "alert" by a dog is sufficient to constitute probable cause for an arrest or search. *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir.1990); *United States v. Race,* 529 F.2d 12 (1st Cir.1976). On this principle the parties agree. Furthermore, once probable cause is established, officers may search the vehicle under the automobile exception to the warrant requirement. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The court holds that the "alert" in this case was sufficient to create probable cause to search Taylor's Suburban.

### 5. Authority for Continuing and Extraordinarily Complete Search

#### i. Basis for Delayed Search

■ In *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court reasoned that police could search later whenever they could have searched earlier, had they so chosen. *Id.* at 51–52, 90 S.Ct. at 1981–82. The Court has noted, with respect to the *Chambers* rationale:

> noted above, focused upon the illegality of the continued detention of the vehicle in order to initiate the "sniff." In a check-lane environment, such as that in *Michigan Department of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (upholding the use of roadblocks as sobriety check points) it seems clear that no *illegal* detention is at hand and that even a *Buchanon* analysis would not require independent justification for approaching the vehicle with a dog.

Following *Chambers* if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle.

*California v. Acevedo,* 500 U.S. 565, 570, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991).

Taylor characterizes the facts in this case as constituting two separate searches, one at the roadside and another in the maintenance building. He claims that once drugs were not found during the initial search at the side of the road, he should have been free to go because there remained no further basis for detaining the car and its occupants; he further posits that no independent probable cause arose after the roadside search to justify what he calls the second search in the maintenance facility.[3] (Defendant's Motion, 5). He argues essentially for either a time limit, at the end of which the probable cause given by the dog's "alert" evaporates, or some other form of restriction holding that, once an officer commences a search based on probable cause, he must continue that search without ceasing or else be determined to have "used up" the probable cause he once possessed.

■ The court does not agree. There is no arbitrarily-determined time limit imposed by the Fourth Amendment such that a search, once commenced, must continue without abatement. Indeed, to impose a rule that searches must be immediate or uninterrupted would provide perverse and unproductive incentives to officers. It would foster a legal environment in which an officer at the roadside, with probable cause to search an automobile, would have to remove that vehicle's occupants, and require them to remain outside the vehicle even in the most inclement of weather while the officer conducted in full view of the public as thorough a search

---

**3.** Taylor relies on *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995), where the court stated that:

> Once the purpose of the initial traffic stop was completed the officers could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated necessary reasonable suspicion to justify further detention.

for as long a time as can be justified, all to avoid being held to have abandoned the search at the first pause. For example, if during the course of such a search, the officer discovered evidence indicating the vehicle needed to be disassembled to reveal contraband, must the officer disassemble the vehicle by the side of the road? The defendant suggests no limits to the novel rule he proposes, and offers no principle which would restrain a later court from declaring a probable cause automobile search "concluded" after nothing more than an initial glance which reveals nothing of interest. If the glance—or a cursory "sweep," as here—turned up no evidence, the defendant suggests that fresh and different probable cause would be required to go any further.

Other courts that have examined this issue have determined that "fresh" probable cause is not needed for a subsequent search. *United ed States v. Casares–Cardenas,* 14 F.3d 1283, 1286 (8th Cir.1993) ("once reasonable basis for search·of an automobile has been established, the search need not be completed on the shoulder of the road."); *United States v. McSween,* 53 F.3d 684, 689 (5th Cir.1995) (rejecting the defendant's contention that a second search at the sheriff's office was not justified by the roadside probable cause); *United States v. Ross,* 456 U.S. 798, 807 n. 9, 102 S.Ct. 2157, 2163 n. 9, 72 L.Ed.2d 572 (1982) ("if an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded."). The court in *Casares–Cardenas* made clear both that new probable cause is not needed and that a thorough search need not be done forthwith:

> The discovery of drugs in the trunk of the car gave rise for probable cause for the officer to search the entire car. The complete search of the car need not have occurred at the curbside, however.... [H]e was confronted with two choices: he could have conducted a limited search, and, upon finding some of the narcotics, undertaken a complete disassembly of the car right on the shoulder of the road; or he might simply, as was the case here, conduct a complete search at a later time while the vehicle remained in police custody. The second alternative seems to us to be more palatable, because once the basis for the warrantless search is established, requiring it to be done immediately or within some narrow time limit might result in a more intrusive search than either necessary or desirable in a free society.

14 F.3d at 1286.

■ Similarly, this court holds that so long as probable cause exists to justify an automobile search, the constitution permits officers to conduct a search the scope of which is commensurate with the facts supporting the existence of probable cause. Law enforcement officers are not by the constitution limited to a mere "glance," a "sweep," a "cursory first phase," or anything of the kind.[4]

The officers found conditions upon their first sweep which had been unknown previously. Officer Unger testified that an initial search of the vehicle was carried out "primarily for officer safety ... to check for weapons inside the vehicle." (Tr. 18). This initial search, which lasted approximately two minutes, (Tr. 20), provided additional indications to the officers that their search should continue at another location:

> Because of the—the nature of the vehicle, we saw there was clothing. There were some bags, like luggage type bags in the back-end; because of the traffic conditions; because of the inclement weather, I made the decision to have another officer come down to our location, and to drive the

---

4. See *United States v. Harwood,* 998 F.2d 91 (2d Cir.1993), (search for easily concealed blotter LSD justifies search behind vehicle door panels); *State v. Bigelow,* 451 N.W.2d 311 (Minn.1990) (a warrantless search of a vehicle for contraband "justifies a search of every part of a vehicle and its contents that may conceal the object of the search."). Thus, if probable cause exists to be-lieve that something easily concealed may be in the vehicle, the search, for that very reason, may be fairly intrusive. On the other hand, if the belief were that a non-concealable stolen television may be inside, there would be no justification on that basis to tear open door panels or glove compartments; a "sweep" may be the only reasonable "search" under the facts.

vehicle back to the maintenance building ... (Tr. 20).

Officer Unger further testified that the cursory search beside the side of the road was "absolutely not" intended as being a complete search. (Tr. 20). There is no testimony or other evidence to the contrary, either direct or inferential. Accordingly, the court finds that the mere act of moving this vehicle to a location where a more thorough search could be continued is of no significance in the analysis of the constitutional legitimacy of this search as a whole.

The court also concludes that the continued search of the Suburban at the maintenance shed was justified because it continued to be fully supported by probable cause. The evidence is unequivocal: the search was by no means complete at the side of the road, nor was probable cause extinguished when the vehicle was taken to the storage shed for a continuation of the search. The court determines that the search at the maintenance shed was nothing more than a second phase of one search based on genuine and properly-founded probable cause and the automobile exception to the Fourth Amendment's warrant requirement.

*ii. Basis for Opening Safe and Duffle Bag*

 The officers were justified in the subsequent search of the duffle bag and safe inside the vehicle. In *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Court held that a warrantless search of an automobile could include a search of a container or package found inside the vehicle when the search was supported by probable cause. Similarly, in *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court ruled that a warrant was not required for the search of closed containers found within an automobile when the police have probable cause to believe that it holds contraband or other evidence. Thus, the searches of Taylor's luggage and safe were also proper.

## IV. Conclusion

Accordingly, for the reasons set forth in the body of this order, IT IS ORDERED THAT the magistrate judge's recommendation to grant defendant's motion to suppress the search of his vehicle is REJECTED and that defendant's motion to suppress the search of his vehicle and its contents is DENIED.