**Gary BAYLESS and Brandy Bayless, Plaintiffs,**

v.

**CITY OF FRANKFORT Through and By the Frankfort City Council; Frankfort Police Dept; James Skinner, Individually and in his Official Capacity as Frankfort Chief of Police; Joseph Sheets, Individually and in his Official Capacity as a Frankfort Police Officer; and Eric Booth, Individually and in his Official Capacity as a Frankfort Police Officer, Defendants.**

No. IP 96–0280–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 14, 1997.

Arley Arthur, Indianapolis, IN, for Plaintiff.

Robert W. Wright, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for Defendant.

### ENTRY GRANTING SUMMARY JUDGMENT

BARKER, Chief Judge.

This matter comes before the Court on Defendants' motion for summary judgment seeking dismissal of Plaintiffs' 42 U.S.C. § 1983 civil rights claim. The motion is GRANTED because Plaintiffs have failed to establish that Defendants violated their federal constitutional rights.

### FACTS

At approximately 6:30 p.m. on October 26, 1995, Officer Joseph Sheets ("Sheets") of the Frankfort Police Department received a call from dispatch regarding an alleged hit-and-run accident in a Little Caesar's Pizzeria parking lot located in the City of Frankfort, Indiana and the County of Clinton. Sheets Aff. ¶ 3. Sheets responded to the call, and shortly after arriving on the scene, he spoke with the victim, Linda Gilmore ("Gilmore"). *Id.* at ¶ 4. Gilmore provided Sheets with (1) a description of the suspect vehicle, a Pontiac Grand Am with a missing rear windshield, (2) the suspect vehicle's license number, which she had obtained from an eyewitness, and (3) the description of a woman who left Little Caesar's immediately before the accident who had identified herself as "Bayless." *Id.* at ¶ 5–6.

Based on that information and an inspection of Gilmore's vehicle, Sheets radioed dispatch and obtained the address for Brandy Bayless. *Id.* at ¶ 8. Sheets also determined through the police dispatcher that a car matching the description of the suspect car as given by Gilmore was owned by one Brandy Bayless, which had a license nearly identical to the one reported to be on the suspect car. Sheets, joined by fellow Police Officer Booth, paid an initial visit to the Bayless residence, where they observed the suspect vehicle parked in the front yard in plain view.[1] *Id.* at ¶ 9. When Brandy and Brian

---

1. The Baylesses' vehicle was later identified as a 1988 Burgundy Pontiac Grand Am.

Bayless greeted the officers at the door, Sheets noticed that they were eating pizza and a box container from Little Caesar's was nearby. *Id.* at ¶ 10. When questioned, both Baylesses denied any knowledge of the hit-and-run accident, commenting that the vehicle was inoperable. *Id.* Brian Bayless then said that he would handle the situation and told Brandy Bayless that she should go inside, which she did. Brandy Bayless Depo. at 52. Sheets then requested permission to inspect the vehicle, which Brian Bayless granted. Sheets Aff. at ¶ 10. Sheets observed that the car engine was hot, indicating that it had been operating recently. *Id.* at ¶ 10–11. Sheets also observed a maroon transfer paint scrape as well as transfer paint matching the paint color of Gilmore's car on the exterior of the Baylesses' vehicle. *Id.*

Shortly thereafter, Brandy Bayless' husband, Gary Bayless, arrived and also denied any knowledge of the hit-and-run accident. *Id.* at ¶ 12. Sheets informed the Baylesses that if the driver of the vehicle involved in the hit-and-run accident could be identified, the driver would be issued a ticket and the matter concluded; otherwise, the vehicle would have to be seized. *Id.* at ¶ 13. The Baylesses continued to maintain that they knew nothing of the accident. *Id.* at ¶ 14. Pursuant to Frankfort police policy, Sheets then seized the vehicle and had it towed to Jerry's Body Shop, where it was subsequently stored. *Id.* The Frankfort Police Department had an unwritten policy "that if probable cause exists to believe a vehicle was involved in a hit-and-run accident, that vehicle is seized as evidence of the crime and held until the investigation can be concluded." Skinner Aff. ¶ 5.

Some four and a half months later, with the vehicle still in custody, the police searched it again on March 1, 1996. Ward Aff. ¶ 4. Sheets and Detective Ward ("Ward"), along with an unidentified Indiana State Police officer, conducted the search. *Id.* They began by removing paint samples from the exterior of the vehicle, pursuant to a valid warrant that had been issued earlier that day. *Id.* They next conducted a warrantless search of the vehicle's interior, with Ward entering the vehicle and attempting to start its engine. *Id.* at ¶ 5. While sitting in the driver's seat, Ward seized several receipts he observed lying on the console in plain view as evidence of where the vehicle may have been around the time of the hit-and-run. *Id.* On March 6, 1996, Ward obtained a warrant to search for any documents that might identify the occupants of the vehicle at the time of the hit-and-run accident and to allow him to determine whether the vehicle was operational. *Id.* ¶ 6.

The vehicle remained impounded at Jerry's Body Shop until on or about August 16, 1996, at which time, Jerry's Body Shop sold the Baylesses' vehicle without having obtained authorization to do so from the Frankfort Police and without providing notice to the Baylesses. *Id.* at ¶ 15 & 16; Skinner Aff. ¶ 13; Ward Aff. ¶ 7.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movants to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 366 (7th Cir.

1997); *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992). However, this court must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel*, 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

Nevertheless, only issues of fact that could affect the outcome of a case are "genuine" such that they may save a case from summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir.1994). Thus, if it is clear that a plaintiff will be unable to satisfy the legal obligations required of him to establish his case, summary judgment is not only appropriate, but also required. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir.1989).

### FOURTH AMENDMENT CLAIM

Title 42 United States Code § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

The Baylesses contend that Defendants violated their Fourth and Fourteenth Amendment rights.[2] Their Fourth Amendment claim is based on two events: the October 26, 1995 search and seizure and the March 1, 1996 search and seizure. Defendants maintain that the searches and seizures were permissible under the Fourth Amendment because probable cause existed to believe that the vehicle had been involved in criminal activity, namely, a hit-and-run accident.[3] Plaintiffs respond that Defendants violated the Fourth Amendment warrant requirement because their actions were not undertaken pursuant to a valid warrant or a permissible exigency.

The Supreme Court in *Carroll v. United States*, 267 U.S. 132, 153–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925), first recognized the so-called automobile exception to the warrant requirement. This exception "allows a warrantless search and seizure of a car so long as the search is justified by probable cause," *United States v. Rivera*, 825 F.2d 152, 158 (7th Cir.1987), and, contrary to Plaintiffs' contention, the exception is not limited to exigent circumstances. *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982). Indeed, a police officer's inability to obtain a search warrant is not a prerequisite to the application of the automobile exception. *United States v. Reis*, 906 F.2d 284, 290 (7th Cir. 1990).

■ Plaintiffs maintain that the automobile exception is inapplicable because the police lacked probable cause to search or seize the Baylesses' vehicle. However, Plaintiffs' contention is unsupported by the evidence, which demonstrates that probable cause plainly existed for them to believe that the Baylesses' vehicle had been involved in the hit-and-run incident. Prior to the initial search and seizure, Gilmore, the victim of the hit-and-run, provided police with a description of the suspect car, a Pontiac Grand Am with a missing rear windshield, as well as the license number of the suspect car, which she had obtained from an eyewitness. Gilmore further indicated that a woman, who had been identified by the name, "Bayless," had left Little Caesar's immediately before the accident.

---

**2.** Plaintiffs argue in two sentences of their memorandum that the Frankfort Police Department's policy of impounding cars suspected of being involved in a hit-and-run violates the Fifth Amendment. Plaintiffs provide no reasoning or authority for this conclusory statement, however.

Further, this policy on its face or as applied in this case does not violate the Fifth Amendment.

**3.** A hit-and-run resulting in property damage is a Class B misdemeanor. *See* IND.CODE § 9–26–1–8.

The information Sheets had obtained regarding the possible ownership by Brandy Bayless of a car matching the description of the suspect car given by Gilmore, bearing a license plate substantially identical to the one seen on the suspect car, led Sheets and Booth to proceed with their investigation by going to the Bayless residence, where other corroborative evidence was noted: the suspect vehicle in the front yard in plain view, and the family eating pizza taken from a Little Caesar's box. These facts provided probable cause permitting the officers to inspect the Baylesses' vehicle.[4] The fact that the engine was hot, indicating that it had likely been operating recently, contradicted what the Baylesses had said when telling the officers that the car was inoperable. Further, Sheets observed a maroon paint scrape as well as transfer paint matching the paint color of Gilmore's car on the exterior of the Baylesses' vehicle. All the circumstances plainly provided probable cause to seize the Baylesses' vehicle on the suspicion that it had been involved in the hit-and-run accident. See United States v. Young, 38 F.3d 338, 340 (7th Cir.1994) (probable based upon a consideration of the totality of circumstances). Accordingly, the October 26, 1995 search and seizure were entirely justified by the automobile exception.

▇ The Baylesses contend that their Fourth Amendment rights were also violated when the police searched their impounded vehicle on March 1, 1996 and seized several receipts found inside. Defendants rejoin that the automobile exception again justified the March 1, 1996 search and seizure, in the same fashion it justified the October 26, 1995 search and seizure.

The fact that the March 1, 1996 search and seizure occurred some four and a half months after the Baylesses' vehicle was impounded raises the issue of whether the automobile exception is inapplicable due to the passage of time. Settled precedents make it clear that "the automobile exception does not require an immediate search; the police may lawfully seize the car, and then search it

later." United States v. Pace, 898 F.2d 1218, 1244 (7th Cir.1990) citing Florida v. Meyers, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984). But how much later may such a search take place and remain valid under the automobile exception? The Supreme Court has repeatedly held that a warrantless search of an automobile need not occur contemporaneously with the car's lawful seizure. See California v. Acevedo, 500 U.S. 565, 569–71, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (explaining that the police can search later whenever they could have searched earlier, had they so chosen) (describing the Court's reasoning in Chambers v. Maroney, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981–82, 26 L.Ed.2d 419 (1970)); United States v. Johns, 469 U.S. 478, 484–85, 105 S.Ct. 881, 885–86, 83 L.Ed.2d 890 (1985); Thomas, 458 U.S. at 261–62, 102 S.Ct. at 3080–81 (1982) (per curiam).

The Fourth Circuit, in United States v. Gastiaburo, 16 F.3d 582, 587 (4th Cir.1994), interpreted the Supreme Court holding in Acevedo as meaning that "the passage of time between the seizure and the search of [the] car is legally irrelevant." In so holding, the Fourth Circuit upheld a warrantless search of an automobile lawfully seized, pursuant to the automobile expectation, thirty-eight days prior. Id. The Eight Circuit also has counseled against imposing time limits, warning that "once the basis for the warrantless search [of an automobile] has been established, requiring it to be done immediately or within some narrow time limit might result in a more intrusive search than either necessary or desirable in a free society." United States v. Casares–Cardenas, 14 F.3d 1283 (8th Cir.1994).

Plaintiffs do not contend that the passage of time in the case at bar was unreasonable. Indeed, the evidence indicates that the time lapse was due merely to the priority of more pressing law enforcement matters. Therefore, although, as a theoretical matter, timing may not be entirely irrelevant, in this case the passage of time between the seizure of

---

**4.** The inspection was also authorized when Brian Bayless consented to this inspection, advising Brandy Bayless (in front of Sheets) that he would handle the situation and telling her that she should go inside. Although not the owner of the vehicle, Brian Bayless' consent was valid to the extent that he had chosen to assert apparent authority over the vehicle. See Forman v. Richmond Police Dept., 104 F.3d 950, 958 (7th Cir. 1997).

the Baylesses' vehicle and the March 1, 1996 search did not extend long enough to foreclose the applicability of the automobile exception rule.

Neither does the apparent lack of mobility of the Baylesses' vehicle on March 1, 1996 foreclose the application of the automobile exception. *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982). In the past, courts have justified the automobile exception solely on the basis of the inherent mobility of automobiles. *United States v. Matthews*, 32 F.3d 294, 298 (7th Cir.1994). More recently, however, courts have applied the automobile exception to immobilized vehicles based on the notion that there is a diminished expectation of privacy in automobiles due to heavy regulation. *See id.* at 299; *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir.1990). This rationale serves to justify the March 1, 1996 search and seizure in this case. The Baylesses had little, if any, reasonable expectation of privacy in their impounded vehicle on March 1, 1996. Not only do automobiles generally invoke a diminished expectation of privacy, (*see id.*,) but the Baylesses' vehicle had already been searched once and was still in police custody. Probable cause continued to exist premised on the reasonable belief by the police that the car had been involved in the hit-and-run accident. Since the Baylesses' expectation of privacy in the vehicle remained minimal and probable cause continued to exist, the automobile exception provided justification for the March 1, 1996 search and seizure.[5] Accordingly, Defendants' motion for summary judgment on Plaintiffs' Fourth Amendment claims is GRANTED.

### FOURTEENTH AMENDMENT CLAIM

◼ In addition to their Fourth Amendment claim, Plaintiffs contend that the prolonged seizure of their vehicle violated their Fourteenth Amendment right to procedural due process. Defendants rejoin that state law remedies afforded Plaintiffs their due process.

◼ Procedural due process claims require a two-step analysis. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). "The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Id.* Clearly, Plaintiffs satisfy the first step because they were deprived of their vehicle. *See United States v. Hubbard*, 650 F.2d 293 (D.C.Cir.1980) (a party from whom materials are seized in the course of a criminal investigation retains a property interest in the seized materials). The more significant issue is whether the Baylesses were deprived of their vehicle without due process. The Supreme Court has rejected the notion that a hearing is always required prior to a deprivation of property, (*Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915–16, 68 L.Ed.2d 420 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986),) holding that the availability of a post-deprivation remedy is all the process that is due in certain circumstances. *Id.; see also Doherty*, 75 F.3d at 322. In this case, the Fourteenth Amendment does not require pre-deprivation process before seizing the instrumentality of a crime; post-deprivation process is sufficient. *See Siegel v. Sonquist*, 554 F.Supp. 1217, 1218 (E.D.Wis.1983).

The Indiana Tort Claims Act provides the Baylesses adequate post-deprivation process to redress their alleged property loss. *See Thurman v. Rose*, 575 F.Supp. 1488 (N.D.Ind.1983) (alleged unconstitutional retention of seized property has sufficient post-deprivation remedy under the Indiana Tort Claims Act and thus fails to state a claim under § 1983). The Seventh Circuit in *Hossman v. Spradlin*, 812 F.2d 1019, 1023 (7th Cir.1987), held that the Indiana Tort Claims Act "provides a constitutionally adequate

---

**5.** Brian Bayless' consent to the October 26, 1995 inspection of the Bayless vehicle may also justify the March 1, 1996 search. In *United States v. Casares–Cardenas*, 14 F.3d 1283 (8th Cir.1994), the search of a car seized two months prior based on consent to a search given by the owner at the time of the seizure was upheld. The scope of Brian Bayless' consent included an inspection of the vehicle, which reasonably includes a determination of whether the engine would start. Since the police were justified in entering the car to start the engine, seizing the receipts was also justified because they were in plain view.

remedy to redress property loss caused by a state officer and avoids appellant's claim that he was intentionally deprived of his property without due process of law." *Id.; see also Wilson v. Civil Town of Clayton, Indiana,* 839 F.2d 375, 383 (7th Cir.1988).

The Indiana Tort Claims Act also provides Plaintiffs with sufficient protections in the nature of due process regarding the sale of their vehicle. The Bayless vehicle was not sold pursuant to an official policy or governmental action (Skinner Aff. ¶ 13; Sheets Aff. ¶ 16; Ward Aff. ¶ 7); rather, the undisputed evidence establishes that Jerry's Body Shop sold the car without police authorization in order to satisfy overdue storage fees. Skinner Aff. ¶ 13. Challenges to such unauthorized conduct are maintainable through a post-deprivation hearing which is all that is required under Fourteenth Amendment standards. *Doherty v. City of Chicago,* 75 F.3d 318, 323 (7th Cir.1996) (Fourteenth Amendment only requires post-deprivation hearing in response to intentional, unauthorized conduct by state employees).

In *Campbell v. Chappelow,* 95 F.3d 576 (7th Cir.1996), the Seventh Circuit held that the Indiana Tort Claims Act provided adequate Fourteenth Amendment process when properly seized evidence was sold without official authorization or notice to the owners. *Campbell* involved a police seizure of cattle after receiving a report that the animals were being treated inhumanely. *Id.* at 578. After their seizure, the cows were not taken to the police station, but sheltered at the Humane Society. Thereafter, unbeknownst to the police, "the individual caretakers of the cattle had filed liens against [the cow's owner] seeking reimbursement for caretaking costs, and sold the cattle to satisfy the liens." *Id.* The owner's claim that the sale violated his due process rights was dismissed in part because the Indiana Tort Claims Act was determined to provide the owner a sufficient post-deprivation remedy. *Id.* Similarly, here the Indiana Tort Claims Act must be seen to provide the Baylesses a sufficient post-deprivation remedy giving them the process they are due to challenge the unauthorized sale of their vehicle by Jerry's Body Shop. Therefore, Defendants' motion for summary judgment on Plaintiffs' Fourteenth Amendment claim is GRANTED because the Baylesses' alleged property deprivations can be pursued via the Indiana Tort Claims Act.

In conclusion, Defendants' motion for summary judgment on Plaintiffs' Fourth Amendment claim is GRANTED because Defendants' actions were justified under the automobile exception. Defendants' motion for summary judgment on Plaintiff's Fourteenth Amendment claim is GRANTED because Plaintiffs are provided sufficient due process by the Indiana Tort Claims Act.