UNITED STATES of America, Appellee,

v.

John M. GRABINSKI, Appellant.

No. 83–1475.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1983.

Decided Feb. 2, 1984.

Rehearing and Rehearing En Banc
Denied March 6, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, James P. Springer, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee; James M. Rosenbaum, U.S. Atty., Minneapolis, Minn., of counsel.

MacPherson & McCarville, P.A. by Donald W. MacPherson, Phoenix, Ariz., for appellant.

Before HEANEY and McMILLIAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

John M. Grabinski was convicted on two counts of failure to make federal income tax returns for calendar years 1975 and 1976 in violation of 26 U.S.C. § 7203 (1976). He was sentenced to one year imprisonment plus payment of the costs of prosecution on each count, the sentences to run concurrently. Pursuant to this sentence, the court subsequently awarded the United States $6,446.09 in prosecution costs. Grabinski appeals from the judgment of conviction and the denial of his post-trial motion, 558 F.Supp. 1324, and challenges specific items included in the award of prosecution costs. We affirm Grabinski's conviction but reverse the award of prosecution costs in part.

Grabinski is no stranger to this Court. In September of 1981, a panel of the Court dismissed for lack of jurisdiction his appeal from the district court's denial of various pretrial motions. *United States v. Grabinski,* 664 F.2d 293 (8th Cir.1981) (decided without published opinion). On rehearing that decision en banc, the full Court followed the panel, holding that Grabinski had not raised a colorable claim of double jeopardy subject to interlocutory appeal nor any other ground for appellate review prior to his trial on the merits. *United States v. Grabinski,* 674 F.2d 677 (8th Cir.) (en banc; per curiam) (Heaney, J., concurring; Lay, C.J., with Stephenson and McMillian, JJ., dissenting in part), *cert. denied,* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982).

The facts underlying Grabinski's conviction are not in dispute: He filed federal income tax returns as required by law until 1975. In that year, he filed a return for calendar year 1974 without answering a question regarding foreign accounts and without a Form 4683, which was required of taxpayers with an interest in foreign bank accounts. He omitted this information to conceal his ownership of gold in a foreign account.

For calendar year 1975, he filed a Form 1040 containing for the most part objections to giving any information based on the fourth and fifth amendments to the United States Constitution. He objected to questions regarding his gross income, deductions, exemptions, and credits, but entered the figure 6540.72, explained in the margin as "taxable income in lawful U.S. dollars," as his taxable income. From this figure, he estimated his tax from the tax tables, subtracted two figures for a personal exemption and unexplained credits, and finally asserted that he was entitled to a $3,555.74 refund from the government. Attached to this Form 1040 were over one hundred pages of tax protest materials.

For calendar year 1976, Grabinski filed a Form 1040 similar to his form for 1975, except he asserted that his taxable income for the latter year was zero. Because he had his employer discontinue withholding money from his salary for federal taxes prior to January 1, 1976, he claimed no tax liability and no refund owing for 1976. Most of the remaining lines relating to gross income, deductions, exemptions, and credits had the notation "OBJECT" with reference in the margin to his fourth and fifth amendment claims. Over one hundred

684

pages of tax protest materials also accompanied this form.

The criminal proceedings flowing from this apparent cat-and-mouse approach to the federal tax laws were as follows: In late 1980, a federal grand jury in the Eastern District of Missouri indicted Grabinski for failure to make an income tax return for calendar year 1976. Among numerous pretrial motions, Grabinski moved for dismissal for want of jurisdiction or for a change of venue to the District of Minnesota, alleging that he was a lifelong resident of St. Paul, Minnesota. The United States District Court for the Eastern District of Missouri denied the motion to dismiss but agreed that the place of trial should be St. Paul.[1] See 18 U.S.C. § 3237(b) (1982); Fed. R.Crim.P. 21(b). The Missouri court, sitting in St. Paul, later reconsidered Grabinski's earlier motion concerning jurisdiction and dismissed the case without prejudice on March 23, 1981.[2] The court's ruling was apparently predicated upon a finding that Grabinski's residence when he filed his Form 1040 for 1976 was Minnesota, rather than Missouri as alleged in the indictment. The Internal Revenue Code requires personal returns to be filed in the district of one's legal residence or at an IRS service center for that district, 26 U.S.C. § 6091(b)(1)(A)(i) & (ii) (1976), and federal law requires that a criminal prosecution must be brought at least initially in a district in which the offense was committed, see 18 U.S.C. § 3232 (1982); Fed.R.Crim.P. 18. See also U.S. Const. art. III, § 2 & amend. VI (constitutional venue and vicinage provisions).

On March 30, 1981, the government filed an information in the District of Minnesota charging Grabinski with two counts of failure to make tax returns for calendar years 1975 and 1976 respectively. Both counts alleged that the returns should have been made to the IRS office in St. Paul or the service center for the Minnesota district in Ogden, Utah. Grabinski raised numerous pretrial motions before the Minnesota district court, most of which were denied. He brought interlocutory appeals of several of the court's pretrial rulings which we dismissed for lack of appellate jurisdiction. See United States v. Grabinski, supra, 674 F.2d at 681. Following a five-day trial, the jury found Grabinski guilty on both counts. The Minnesota district court, in a detailed memorandum opinion, denied Grabinski's motion for post-trial relief from the jury verdict.

Grabinski raises several issues on appeal. Five of these contentions deserve specific comment. First, and most importantly, he alleges that the district court erred in denying his motion for a judgment of acquittal because the prosecution of the Minnesota information was vindictive. We disagree. Our earlier en banc decision did not reach the merits of this issue. United States v. Grabinski, supra, 674 F.2d at 680. Three judges at that time opined that the facts of the present case raised a presumption of prosecutorial vindictiveness and that such a claim was a collateral issue appealable before a final decision on the merits. Id. at 681–683 (Lay, C.J., with Stephenson and McMillian, JJ., dissenting in part). See Blackledge v. Perry, 417 U.S. 21, 25–29, 94 S.Ct. 2098, 2101–2103, 40 L.Ed.2d 628 (1974); United States v. DeMarco, 550 F.2d 1224, 1226–1227 (9th Cir.), cert. denied, 434

1. In our previous en banc opinion, we indicated that the Missouri district court denied Grabinski's motion for change of venue. United States v. Grabinski, 674 F.2d 677, 678 (8th Cir.) (per curiam), cert. denied, 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982). This statement addressed venue in the sense of which district court should try the offense, not the place at which the trial would take place at the defendant's request.

2. In our en banc opinion, we stated, "On March 23, 1981, * * * the court, on its own motion, dismissed the case without prejudice for lack of jurisdiction." Id. On closer analysis, it is clear that the Missouri district court decided sua sponte to reconsider the motion earlier filed by Grabinski and gave his counsel every opportunity to withdraw that motion. Tr. at 1–7 (March 23, 1981). Counsel declined that opportunity, however, so the subsequent dismissal without prejudice may properly be considered as having been on defendant's motion. In any event, the distinction between a sua sponte reconsideration and a sua sponte dismissal, if any, does not affect the result we reach on this appeal.

U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977). That opinion was given, however, without the benefit of the Supreme Court's decision in *United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), decided after our en banc opinion in this case.

In *Goodwin,* the government obtained a felony indictment to supersede previously filed misdemeanor charges after the defendant demanded a trial by jury. *Id.* at 370, 102 S.Ct. at 2487. The Supreme Court declined to adopt an inflexible rule presuming vindictiveness whenever a prosecutor increases the stakes of criminal punishment in a pretrial setting. *Id.* at 381, 102 S.Ct. at 2493. The Court stated, "[A] defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor. * * * It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *Id.* Given the timing of the superseding indictment and the facts before it, the Court held that no presumption of vindictiveness was warranted. *Id.*

Without deciding whether in other circumstances pretrial activity by a prosecutor might raise a presumption of vindictiveness, we hold that such a presumption is not warranted here. The government in this case was faced with two separate acts of alleged misconduct, and Grabinski apparently spent substantial amounts of time from 1975 through 1977 in Fort Worth, Texas; St. Louis, Missouri; and St. Paul, Minnesota. Given the information possessed by the government when the Missouri indictment was obtained, including letters from Grabinski, he apparently could not have been prosecuted for his 1975 and 1976 violations in the same jurisdiction absent his consent, because he claimed residence in St. Louis when the form for 1976 was filed and resided in either Texas or Minnesota when the form for 1975 was filed. Thus, the initial decision to bring only one count in Missouri was reasonable.

■ Subsequent to this decision, Grabinski raised several motions in the Missouri district court, supported by affidavits and exhibits, alleging that he was a lifelong resident of St. Paul and thus could not be prosecuted for failure to make a return for 1976 in Missouri. The government did not accept Grabinski's change in position but continued its prosecution based on his earlier representations and the information in its file. Not until March 23, 1981, when the Missouri court sitting in St. Paul determined prior to Grabinski's trial that he in fact was a lifelong resident of St. Paul, could the government be sure that the prosecution of both alleged violations would be proper in the Minnesota forum. The government did not seek the March 23 decision dismissing its case without prejudice; indeed, it opposed Grabinski's claim as just another ploy to escape prosecution on one or both of his violations. Contrary to Grabinski's assertion on appeal, the government's assessment of the proper scope of prosecution had not "crystallized," as that term is used in *Goodwin,* until this judicial determination of Grabinski's residence. *United States v. Goodwin, supra,* 457 U.S. at 381, 102 S.Ct. at 2493. Therefore, the addition of a count for Grabinski's failure to make a return for 1975 after his jurisdictional victory before the Missouri court regarding his failure to make a return for 1976 did not raise a presumption of prosecutorial vindictiveness.

■ Absent any presumption of improper prosecutorial activity, Grabinski presented no independent evidence to support his vindictiveness claim. The government's investigation of his tax dealings apparently continued to be focused on both his forms for 1975 and 1976 throughout these proceedings. He does not allege that he was threatened with additional charges during his various pretrial motions before the Missouri court, and he points to no concrete indication by the government that it would not pursue his failure to make a return for 1975. For these reasons, we affirm the district court's denial of Grabinski's motion for a judgment of acquittal based on his allegation of prosecutorial vindictiveness.[3]

**3.** Even if the timing and the nature of the

government's actions in this case raised a pre-

■ Second, Grabinski contends that the district court should have submitted to the jury the issue of whether his forms for 1975 and 1976 were tax returns. He argues that the court's failure to do so violated his constitutional right to a jury trial. *See* U.S. Const. amend. VI. We agree with the district court that the issue of whether a return is valid for section 7203 purposes is a question of law for the court to decide. *See United States v. Moore,* 627 F.2d 830, 834 (7th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). This is particularly true in a case in which a return is invalid because of an improper assertion of the fifth amendment privilege against self-incrimination. *United States v. Farber,* 630 F.2d 569, 573–574 (8th Cir.1980), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981) (conviction set aside on other grounds, *see* 679 F.2d 733, 735 n. 3 (8th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 136 (1982)). This determination can be made from the face of the document which a taxpayer files and in no way removes from the jury fact questions regarding whether a defendant was required to file a return; whether a defendant actually failed to make a return which the court would find valid, for example, where a valid return was arguably submitted but lost by the IRS; and whether a failure to file was willful.

Third, Grabinski argues that, even if the question of what is a valid return is for the court to decide, the district court erred in finding that his forms for 1975 and 1976 were not returns. He bases this argument upon language in federal circuit court decisions to the effect that "[a] taxpayer's return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations adopted by the Commissioner." *United States v. Porth,* 426 F.2d 519, 523 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) (citations omitted). *See also Unit-*

*ed States v. Daly,* 481 F.2d 28, 29–30 (8th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973) (per curiam). He contends that the taxable income figures entered on his forms for 1975 and 1976, 6540.72 and zero respectively, enabled the IRS to compute his tax liability and thus those forms constituted tax returns under this test. The district court stated "that a taxpayer who fails to provide all of the information required by the Internal Revenue Code (Title 26) or the regulations promulgated thereunder has not filed a return for purposes of § 7203." *United States v. Grabinski,* 558 F.Supp. 1324, 1331 (D.Minn. 1983) (memorandum order). Because the court found that Grabinski's assertion of constitutional rights to avoid providing information on his forms for 1975 and 1976 was improper, it held that these forms did "not constitute returns." *Id.* at 1333.

■ While we agree with the court's holding, we think that the test stated in its memorandum order is unnecessarily broad. What is important in the determination of the validity of a tax return for section 7203 purposes is whether there is sufficient information given from which the IRS can calculate tax liability based on the circumstances of the taxpayer's income year. *See United States v. Smith,* 618 F.2d 280, 281 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980); *United States v. Edelson,* 604 F.2d 232, 234 (3d Cir.1979); *United States v. Irwin,* 561 F.2d 198, 200–201 (10th Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978). The IRS should not have to accept on faith the taxpayer's assertions regarding taxable income or tax liability without knowledge of circumstances regarding, among other things, gross income received or deductions claimed. On the other hand, omission of isolated information not seriously hampering the IRS's ability to check a taxpayer's asserted tax liability— for example, the omission of a taxpayer's

sumption of prosecutorial vindictiveness, we would find that the presumption was rebutted by the exhibits and testimony in the record and

the arguments made by the government in its responses to Grabinski's prosecutorial vindictiveness motions and claims.

social security number or the nondisclosure of the names of one's dependent children—does not invalidate a return under section 7203. This is not an abandonment of the language used in *Porth, Daly,* and other decisions, but rather a refinement of the test set forth in those cases based on their particular facts.

■ Grabinski's provision of only the bottom line figures on his Forms 1040 for 1975 and 1976 failed to give the IRS information sufficient to determine if those figures were arithmetically correct and properly computed. His bald assertions that his taxable income was 6540.72 "lawful U.S. dollars" in 1975 and zero in 1976 gave the IRS no clue as to his gross income in those years or the adjustments he made to arrive at his taxable income figures. The IRS could not determine whether his income was derived from wages, salaries, tips, interest, or other sources. It could not determine if he had claimed moving expense deductions, itemized deductions, or personal exemptions in excess of those allowed by law. It could not even check his arithmetic between his gross and taxable income computations.

Under these circumstances, we find that the district court correctly held that the forms were not tax returns as a matter of law. *Cf. United States v. Long,* 618 F.2d 74, 75–76 (9th Cir.1980) (per curiam) (succession of zeroes on tax form, even if untrue as a matter of fact, held sufficient information to constitute a tax return). We realize that the "sufficient financial circumstances" test which we use here provides little guidance for tax protesters wishing to tread closely the line of compliance with the law. The best guidance we can give, however, is to provide all information requested by the IRS which is not subject to a valid constitutional or otherwise legal privilege.

■ Fourth, Grabinski asserts that the trial in Minnesota for his failure to make a return for 1976 after a similar charge was dismissed by the Missouri court for lack of jurisdiction amounted to unconstitutional double jeopardy. *See* U.S. Const. amend. V. We earlier found en banc, however,

that the same claim brought during Grabinski's interlocutory appeal was not colorable because jeopardy had not attached under the Missouri indictment at the time that case was dismissed. *Grabinski v. United States, supra,* 674 F.2d at 680. Even were this not law of the case as to the merits of his double jeopardy claim, we would reach the same result on a de novo review of the issue. Although the district court may have decided to dismiss the Missouri case without prejudice based upon the resolution of a factual issue—venue of the offense charged—which would have been a jury question if brought to trial, *see United States v. Black Cloud,* 590 F.2d 270, 272 (8th Cir.1979), prior jeopardy does not attach to rulings made in a pretrial setting. *Serfass v. United States,* 420 U.S. 377, 391–392, 95 S.Ct. 1055, 1064, 43 L.Ed.2d 265 (1975). *See also United States v. Scott,* 437 U.S. 82, 98–99, 98 S.Ct. 2187, 2197–2198, 57 L.Ed.2d 65 (1978) (no prior jeopardy where defendant successfully seeks termination of criminal proceedings on a basis unrelated to factual guilt or innocence). Since Grabinski was not in prior jeopardy when the Missouri court dismissed the case without prejudice for lack of jurisdiction, his subsequent Minnesota trial did not place him in double jeopardy.

■ Fifth, Grabinski contests the district court's award of prosecution costs for the travel and subsistence expenses of IRS Special Agent Ronald Oila and of the government's trial attorney Susan Murname, $1,015.51 and $1,046.50 respectively. The government cites no statute or case law directly allowing the award of these costs. Rather, it alleges that Grabinski should bear Oila's expenses because his counsel called Oila as a witness and that he should bear Murname's expenses because he failed to object to this part of the award below. After reviewing the record, we are convinced that Oila was not a material witness to the government's case and that Grabinski's earlier subpoena of Oila, prior to Oila's moving to Alaska, was not the reason that Oila attended the trial. Furthermore, we consider the award of attorney's expenses

for Murname without statutory or other legal authority to be plain error. Therefore, we reverse the award of prosecution costs as to these two items and reduce the total award for prosecution costs from $6,446.09 to $4,384.08.

We have carefully considered each of Grabinski's other claims—including his assertions regarding his fifth amendment right not to have his pretrial testimony before the Missouri court used against him, his right to a speedy trial, the due process clause, and the right to a superseding grand jury indictment in Minnesota. We find no merit to these remaining claims and think it unnecessary to comment specifically on each.

For the foregoing reasons, we affirm Grabinski's conviction on both counts of failure to make tax returns but reverse the district court's award of prosecution costs in the amount $2,062.01, for a remaining award to the government of $4,384.08.