# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4191

_____

United States of America,               \*

                                 \*

      Plaintiff - Appellee,         \*

                                 \*  Appeal from the United States

v.                         \*  District Court for the Western

                                 \*  District of Arkansas.

Clifford B. Marston,          \*

                                 \*

      Defendant - Appellant.    \*

_____

Submitted:  November 13, 2007
Filed:  March 10, 2008 (Corrected 4/1/08)

_____

Before WOLLMAN, JOHN R. GIBSON, and BENTON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Following jury trial, Clifford B. Marston was convicted on May 19, 2006 in the district court[1] on nine counts of tax evasion, 26 U.S.C. § 7201,[2] twelve counts of filing

_____

[1]The Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas.

[2] The elements of tax evasion are willfulness, the existence of a tax deficiency, and an affirmative act constituting evasion or attempted evasion of the tax.  26 U.S.C. § 7201; Sansone v. United States, 380 U.S. 343, 351 (1965).

false tax documents, 26 U.S.C. § 7206(1),[3] and four counts of assisting in the preparation of false returns or other documents, 26 U.S.C. § 7206(2).[4] In order to prove the scienter necessary to convict Marston under the three statutes, the government was required to show that he acted willfully in failing to report his own taxable income and the income distributed to his employees. During trial, Marston's chief argument was that he held a good faith belief that his domestically earned income was not taxable because it did not amount to a "source" of income under § 861 of the Internal Revenue Code, 26 U.S.C. § 861. Marston contended that § 861 authorizes taxes only upon foreign sources of income, not domestic income. The issue at trial was not whether Marston correctly interpreted the tax code, but whether he held a genuine belief that his interpretation was correct. He raises five issues on appeal: (1) that the government indicted him on a theory of the case that required proof of filing false tax returns, but the documents he filed with the IRS did not meet the legal definition of a "tax return;" (2) that the district court erred when it permitted the government to reference the documents as tax returns; (3) that the district court erred when it allowed the government to introduce testimony relating to the bad tax conduct of other persons; (4) that the district court erred in refusing to admit into evidence a videotape explaining Marston's beliefs; (5) that the district court erred in

---

[3] To be convicted of perjury under the statute, the defendant must "[w]illfully make[] and subscribe[] any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." Id. at § 7206(1).

[4] To be convicted for aiding and assisting the preparation or presentation of a false or fraudulent tax document, the defendant must "[w]illfully aid[] or assist[] in, or procure[], counsel[], or advise[] the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document." Id. at § 7206(1).

issuing a willful blindness jury instruction; (6) and lastly, that the district court erred by imposing a sentence derived from the use of judge-found facts in violation of Cunningham v. California, 127 S. Ct. 856 (2007), and by treating the advisory Sentencing Guidelines range as presumptively reasonable. We affirm.

Clifford Marston, a Doctor of Podiatry, practiced in Springfield, Missouri until 1996, when his practice began to decline as big hospitals bought up patient pools in the area. To combat the decline, Marston moved to Mountain Home, Arkansas, where he opened a practice under his existing Missouri corporation, Sunshine Foot Clinic. Sunshine experienced an initial boom period of robust growth before the arrival of a competing doctor slowed the practice's development. When the practice failed to grow as Marston expected, he began to experience considerable financial strain, causing Marston to accrue approximately $93,000 in credit card debt in addition to loan debt he incurred by taking salary advances from Sunshine.

In January of 1999, Marston's daughter's father-in-law exposed him to a website, which taught that an individual had no legal duty to pay taxes on domestically earned income. After reviewing the website and conducting his own review of the tax code, Marston, according to his testimony at trial, allegedly came to the conviction that Congress had not authorized the collection of taxes on domestic income. On December 6, Marston acted upon this alleged belief and filed several amended employer's quarterly tax return forms 941 with the I.R.S., revising to zero all previously reported wages paid by Sunshine for the 1996, 1997, and 1998 tax years, and requesting a refund of taxes previously paid in each corresponding year. Marston filed additional forms 941 on February 7, 2000 and March 23, 2000, revising to zero all of the employee wages paid by Sunshine for the 1999 tax year. The I.R.S. rejected each of Marston's requests for a refund and described his position as having no legal basis. For the 2000 tax year, Marston reported to the I.R.S., on original forms 941, zero wages for the first two quarters and left blank all wage fields for the later

-3-

two quarters. For the first quarter of 2001, he again filed a form 941 without any markings in any of the wage fields.

On April 5, 2000, Marston and his wife filed a 1040-EZ form with the I.R.S., reporting that he received $6,620.77 in total wages. This amount did not reflect any income earned by Marston from Sunshine, but reflected income received by Marston's wife that was reported to the government and income received from an investment account and reported by Firstar Mutual Fund Services, LLC on a Form 1099-R. According to Marston's disclosure statement, he listed these sources as taxable income despite his conviction that they were not in order to "avoid difficulties with the IRS." On January 4, 2001, Marston reported to the I.R.S. on a 1998 Form 1040EZ that he had zero income in the tax year 1998. He attached a supplementary disclosure statement, Form 8275, justifying his filing by stating that he had received no income from any of the sources listed in 26 C.F.R. § 1.861-8(f)(1). The I.R.S. replied to Marston in a letter dated April 20, 2001, classifying his Form 1040EZ as "frivolous," describing his position as "having no basis in law," and encouraging him to seek the advice of an attorney. On October 2, 2001, Marston sent to the I.R.S. a 1040EZ tax return form for the 2000 tax year that listed zero income.

Sunshine also supplied two employees, Misty Davis and Loretta Jelinek, with federal W-2 forms showing zero wages paid for the tax years 1999 and 2000. Davis and Jelinek subsequently filed tax return forms 1040 for those years, reporting no wages earned from Sunshine. Davis and Jelinek, in consultation with the I.R.S., would eventually report their wages and pay the taxes owed on those wages, along with amounts due on those wages for contribution to the Medicare and Social Security funds.

At trial, Marston argued that he held a good faith belief that domestic sources of income were not taxable. In essence, he argued that the government failed to prove that he acted willfully in making false statements to the I.R.S., in aiding or assisting

Jelinek or Davis in filing false returns, or in evading the payment of income taxes. The jury convicted him of all twenty-five counts. Subsequently, the district court found that the applicable amount of potential tax loss attributable to Marston's conduct was $404,582.37. The district court sentenced Marston to 26 months' imprisonment on each count, to run concurrently.

I.

A.

Marston's first argument presupposes an incorrect reading of the indictment against him. According to Marston, the indictment describes him as having filed false tax returns and aiding and abetting other persons to file false tax returns. Marston argues that none of the documents filed with the I.R.S. meet the legal definition of the phrase "tax return."

We have given the phrase "tax return" a narrow and specific meaning when deciding whether a tax protester has violated 26 U.S.C. § 7203 of the Internal Revenue Code, willful failure to file a tax return. A defendant can be guilty of failure to file a tax return even if he actually files a form with the I.R.S. if that form does not contain "sufficient information [] from which the IRS can calculate tax liability." United States v. Grabinski, 727 F.2d 681, 686 (8th Cir. 1984). Applying this standard, courts have held that a return that contains only zeroes and no information regarding gross income or deductions claimed or only protest information is not considered a valid "tax return," so that a person may be convicted for willfully failing to file a return. Id. at 686 (stating "the IRS should not have to accept on faith the taxpayer's assertions regarding taxable income or tax liability without knowledge of circumstances regarding, among other things, gross income received or deductions claimed."); United States v. Silkman, 543 F.2d 1218, 1219 (8th Cir. 1976) (per curium) (holding that form containing only constitutional objections to taxation is not a return); United

States v. Mosel, 738 F.2d 157, 158 (6th Cir. 1984) (per curium) (same); United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980) (holding that form listing income as zero was not an "adequate" return); United States v. Porth, 426 F.2d 519, 522-23 (10th Cir. 1970) (holding that form listing income as zero and containing constitutional objection to the imposition of a tax, was not a return); see also United States v. Francisco, 614 F.2d 617, 619 (8th Cir. 1980) (filing requirements were not satisfied by a return that contained "no income information from which tax liability [could] be calculated").  Marston argues that the indictment refers to the documents that are the basis of the criminal charges as "tax returns," although they do not provide sufficient information to calculate a tax liability, and therefore the government has necessarily failed to prove an essential element alleged.

Contrary to Marston's reading of it, the indictment does not allege, as elements of the crimes, that he filed "tax returns" as they are legally defined for § 7203 purposes.  The indictment alleges that he filed a "Form 1040EZ an individual income tax return," an  "Employer's Quarterly Federal Tax Return, Form 941," and advised his employees to file an "Individual Income Tax Return Form 1040" with the I.R.S., containing false information (reporting, in most instances, zero wages).  By referring to the forms using their full descriptive titles, including the moniker "form," the indictment is merely indicating which documents it is relying upon to form the basis of the crimes alleged.  Because these documents are tax return forms, that is how they were alleged in the indictment.  Whether those documents contain the necessary information to be "tax returns," adequate to satisfy § 7203, is irrelevant because none of the relevant statutes are limited to "tax returns."   See 26 U.S.C. § 7201 (attempt to evade a tax may be committed "in any manner"); § 7206(1) (willfully making false statements in "any return, statement, or other document" under penalty of perjury is punishable) (emphasis added); § 7206(2) (willfully aiding in the preparation or presentation of false returns, affidavits, claims or other documents is unlawful).  The critical allegation in each count of the indictment is that Marston filed, or assisted in filing, documents which the filer intended to be a tax return, which falsely stated the

amount of income earned by Marston or his employees. Consequently, we hold that the language of the indictment does not require that the government prove these documents were "tax returns."

## B.

In the alternative, Marston argues that the prosecutor committed misconduct by referring to the documents as tax returns during trial and that the district court committed error in allowing the prosecutor to do so. We review this argument for plain error because Marston did not timely object to the prosecutor's conduct. United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001). In order to succeed under plain error review, Marston must show that the district court committed a legal error that was obvious and affected his substantial rights. Id. "Furthermore, our authority to correct a forfeited error is discretionary, and we will not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted). The defendant bears the burden of proving plain error.

Marston's argument fails. Both he and his attorney referred to the documents as "tax returns." Even if we were to find that the reference to the documents as tax returns was error, we cannot see how the fairness, integrity or reputation of the judicial proceedings are in any way diminished if we refused to notice an alleged error that the defendant and his counsel embraced at trial.

## II.

### A.

According to his testimony, Marston formed the opinion that his income was non-taxable from several sources, including the statements of Thurston Bell and

Larkin Rose, individuals who once maintained separate Internet websites advancing the so-called 861 defense, an argument that contends section 861 of the Internal Revenue Code permits taxation of only income derived from foreign sources. Over Marston's objection the government was permitted to ask Marston if he knew that Rose had been convicted of willful failure to file a tax return and that Bell had been enjoined from operating his website. Marston admitted that he had learned these facts, but only after he had sent to the I.R.S. the documents referenced in the indictment. The government's purpose for eliciting the evidence was to show that Marston did not have a good faith belief that his domestically earned income from Sunshine was non-taxable. On appeal, Marston argues that his knowledge of the injunction and conviction was irrelevant because that knowledge was gained after the alleged acts for which his beliefs serve as a defense to the element of willfulness. We review the district court's admission of the evidence for an abuse of discretion. See United States v. Roenigk, 810 F.2d 809, 815 (8th Cir. 1897).

Although the acts of the offense occurred before Marston learned of the indictment and injunction, he admitted that he continued to rely upon Bell and Rose as a basis for his beliefs long afterwards, even at trial. The fact that Marston continued to espouse a belief that his income was not taxable, even though he knew its proponent had been convicted of tax evasion, reflects negatively on his credibility. Because his defense at trial rested largely upon his own testimony that his beliefs were genuine, circumstantial evidence with regard to his credibility was relevant. Cheek v. United States, 498 U.S. 192, 203-204 (1991) (stating that while a good faith belief does not have to be reasonable, "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge"); United States v. Collorafi, 876 F.2d 303, 305-06 (2d Cir. 1989) ("[P]roof that a defendant continued a tax practice that already had been held unlawful by a federal judge is strong

circumstantial evidence of wrongful intent."). Therefore, the district court did not abuse its discretion in admitting the evidence.

## B.

Next, Marston argues that the district court erred in refusing to admit into evidence a video tape of Larkin Rose describing his § 861 teachings. Marston admitted, during an in camera hearing regarding admission of the video, that the tape did not exist until 2002. The alleged acts occurred between 1999 and 2001, well before the video tape was created. Before testimony began, the district court ruled that the tape would not be admitted because it was irrelevant to Marston's belief at the time of the allegedly illegal acts. Later, during the government's cross-examination of Marston, an issue was made of Marston's continued beliefs. Marston did not renew his request to reintroduce the video tape. At the time the district court ruled the tape was irrelevant and Marston waived his argument that it later became relevant by failing to renew the request. The district court's evidentiary ruling was not an abuse of discretion.

## C.

Marston also argues that he was prejudiced by inflammatory remarks made by the prosecutor during closing arguments. Having conducted a review of the closing arguments, we conclude that the district court did not abuse its discretion in permitting the allegedly inflammatory remarks.

## III.

Marston's argument that the district court erred in giving the jury a willful blindness / deliberate ignorance instruction is foreclosed by circuit precedent, <u>United</u>

States v. Dykstra, 991 F.2d 450, 452-53 (8th Cir. 1993) (holding that instruction on deliberate ignorance was proper where defendant was charged with filing false tax documents); United States v. Bussey, 942 F.2d 1241, 1249 (8th Cir. 1991), that we are without the power to overrule. United States v. Hessman, 493 F.3d 977, 982 (8th Cir. 2007) (only the court en banc may overrule circuit precedent), cert. denied, 2008 WL 114245 (Jan. 14, 2008).

## IV.

### A.

Marston argues that the district court erred by interpreting the law to require that it impose a "reasonable" sentence and by presuming reasonable a sentence within the advisory Guidelines range. Since the time of Marston's sentencing, the Supreme Court has issued three important decisions clarifying our review of a district court's sentencing decisions. See Rita v. United States, 127 S. Ct. 2456 (2007); Gall v. United States, 128 S. Ct. 586 (2007); Kimbrough v. United States, 128 S. Ct. 558 (2007). Pursuant to Gall, we are directed to engage in a two-part systematic sentencing review. See United States v. Washington, ___F.3d___, 2008 WL 216597, at * 2 (8th Cir. Jan. 28, 2008); United States v. Bolds, 511 F.3d 568, 578-79 (6th Cir. 2007). First, we consider whether the district court committed a significant procedural error in reaching its sentence, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." Gall, 128 S. Ct. at 597. Such errors are necessarily an abuse of discretion by the district court. See id. Assuming that there was no significant procedural error, we engage in a "deferential abuse-of-discretion" review of the sentence imposed for substantive reasonableness. Id. Marston's argument focuses on how the district court reached its sentence, not whether the district court

reached a reasonable sentence, and therefore it calls for us to engage in procedural review.

We apply the plain error standard to our review because Marston did not object at sentencing that the district court's interpretation of the law was incorrect.[5] See United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Plain error review is governed by a four-part test: there must be error, it must be plain, and it must affect substantial rights; only if all three conditions are met may an appellate court exercise its discretion to notice a forfeited error, and only then if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting United States v. Olano, 507 U.S. 425, 734-35 (1993)). Unlike harmless error, under plain error review, the defendant bears the burden of proof. Id.

During sentencing, the district court at least twice referred to a sentence within the Guidelines as being presumptively reasonable: "It is generally the general rule of law that a sentence that is then pronounced that is within those advisory guidelines is <u>presumptively reasonable</u>." (emphasis added). Later, the court said,

> So it's not just an unfettered discretion that the Court has post-<u>Booker</u>, to ignore and sentence outside the advisory guidelines. The Court is obliged, I think, to start there. That's what all the cases I've read say. That's where you start, is determine what the guidelines are, and then start there, <u>presuming that you're in a reasonable area to start with</u>, and then determine if there's a basis to go outside of it.

---

[5] We previously applied plain error review to a factually similar case in an unpublished opinion. United States v. Heavner, 2007 WL 4355951 (8th Cir. 2007) (unpublished). Because unpublished opinions carry no precedential value in our circuit, see 8th Cir. R. 32.1A, we treat this issue as a matter of first impression. We also note that the "plain error principle applies even when, as here, the error results from a change in the law that occurred while the case was pending on appeal." United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc).

(emphasis added). In <u>Rita</u>, the Supreme Court approved of such a presumption, but only when it is applied on appellate review of a sentence, not when it is applied during imposition of a sentence. 127 S. Ct. at 2465. The reason for such a limited use of the presumption is evident in the justification for applying it: the sentencing judge has reached a discretionary decision, using the § 3553(a) factors, in accord with the Sentencing Commission's decision applying the same factors when it promulgated the Guidelines. <u>Id.</u> Thus, in hindsight, which is how we review interpretations of law, the district court plainly erred by treating a sentence within the Guidelines as presumptively reasonable. <u>See</u> <u>United States v. Greene</u>, 513 F.3d 904 (8th Cir. 2008) (district court erred in applying presumption of reasonableness); <u>United States v. Huff</u>, ___F.3d___, 2008 WL 239031, at *2 (8th Cir. Jan. 30, 2008) (same).

By presuming the guidelines reasonable, there is a risk that the district court afforded the Guideline's recommendation too much weight, to the detriment of the other § 3553(a) factors, which is contrary to a sentencing judge's duty to "make an individualized assessment based on the facts presented," <u>Gall</u>, 128 S. Ct. at 597. The error committed by the district court is much like the procedural error we considered in <u>Pirani</u>, treating the Guidelines as mandatory instead of advisory. 406 F.3d at 552. In <u>Pirani</u>, we held that the defendant must show prejudice as a result of the error: there must be a reasonable probability that the district court would have imposed a lesser sentence but for the error. <u>Id.</u> Likewise, in this case, Marston must produce evidence from the record that the district court might have imposed a more favorable sentence except for application of the erroneous presumption.[6] <u>Pirani</u>, 406 F.3d at 550.

Marston points to no evidence in his brief that the district court, exercising its discretion, was inclined to impose a more favorable sentence. Despite counsel having

---

[6] This case was submitted before the Supreme Court decided <u>Gall</u> and <u>Kimbrough</u>. Neither party requested permission to supplement their arguments in light of those cases. Therefore, we take no position with respect to whether <u>Gall</u> or <u>Kimbrough</u> affected the holding in <u>Pirani</u>.

-12-

told us at oral argument that the record would show the district court "felt too constrained" by the presumption, our review of the record reveals no hesitance on the part of the district court. The district court imposed a sentence of 26 months against an advisory Guidelines range of 24-30 months. It expressly noted that the facts of this case neither warranted a sentence at the top nor the bottom of the Guidelines, but one in the middle. Moreover, the district court gave very astute and precise explanations of the Guidelines, this court's interpretations of them, and its own thoughts on the need for just punishment. The sentencing judge engaged in an extended colloquy with regard to a similar sentencing case in our circuit, United States v. Ture, 450 F.3d 352 (8th Cir. 2006), the need for citizens to obey even the laws they do not agree with, the fact that it did not think Marston set out with an intent to steal $400,000 from the government, and the need to impose a sentence that has "serious consequences to it." Even though the district court engaged in an extended discussion on each of these points, it never expressed disagreement with our holdings, the advisory Guidelines range, or the policy judgments reflected therein.

In contrast, we recently remanded two cases for re-sentencing where the district court applied the improper presumption. In both of those cases, however, the district court expressed constraint by the presumption. Greene, 513 F.3d 904 (quoting the district court, "I do not believe based on current Eighth Circuit law that I am permitted to do a variance in this case. However, if I had an opportunity to do a variance based on Booker, I would have done so"); Huff, ___F.3d___, 2008 WL 239031, at *2 (quoting the district court, "I might have departed more in this case but for the Eighth Circuit precedent in the Claiborne case. And if, in fact, that case were to be overturned on appeal, then I would hope that we would have an opportunity to review this sentence . . . I would have given him less of a sentence if I thought that I had the ability to do so"). Similarly, in United States v. Ross, 501 F.3d 851 (7th Cir. 2007) (per curium), the Seventh Circuit reversed a sentence where the district court expressed concern that the Guideline range was "too harsh." Id. at 853-54 (not conducting plain error review).

In this case, the district court never expressed that it felt constrained by the presumption. Moreover, it was very clear that the district court did not rely solely upon the Guidelines, but tried to "take into account everything that [it] can pull into the equation as proper for [it] to consider." Consequently, Marston has failed to meet his burden under plain error review. He has been unable to point to any evidence in the record that suggests the district court would exercise greater discretion if given the opportunity to do so. Accordingly, we hold that his substantial rights were not violated by the district court's erroneous interpretation of the law.

B.

Next, Marston argues that the district court violated his Sixth Amendment right to a trial by jury when it considered judge-found facts, such as the amount of his tax deficiency, to impose a sentence under the United States Sentencing Guidelines. "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). But "[j]udicial fact-finding is permitted provided that it is done with the understanding that the guidelines are to be applied in an advisory fashion." United States v. Morell, 429 F.3d 1161, 1164 (8th Cir. 2005). Marston's argument that the recent Supreme Court decision in Cunningham v. California, 127 S. Ct. 856 (2007), requires otherwise is flawed. Cunningham involved the California state sentencing scheme, which the Court said "does not resemble the advisory system the Booker Court had in view." Id. at 870. That scheme required the California sentencing judge to impose a sentence above the statutory maximum based on judge-found facts. Cunningham, 127 S. Ct. at 868. In contrast, Marston's sentence of 26 months for violating 26 U.S.C. § 7201 (tax evasion) is well below the five year statutory maximum sentence authorized by the jury verdict. Moreover, as we have discussed, the district court expressly recognized the advisory nature of the Guidelines. Therefore, we find no Sixth Amendment violation in the imposition of Marston's sentence.

## C.

Marston does not raise a substantive review argument.  Therefore, we are not called upon to review the reasonableness of his sentence.  We note that, as a result, we need not decide whether a sentence imposed under an erroneous presumption of reasonableness also enjoys a presumption of reasonableness on review.  We leave that question for another day.

## V.

For the reasons set forth, we affirm the judgement of the district court.

_____