# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1602

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Bradley Hodge, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 18, 2009
Filed: February 9, 2010

_____

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bradley Hodge was convicted of three criminal counts related to a conspiracy to manufacture methamphetamine. The district court[1] sentenced him to three terms of 240 months' imprisonment, to run concurrently. Hodge appeals, arguing that the district court erred in denying his motion for judgment of acquittal and in determining his relevant conduct for the purposes of sentencing. We affirm.

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

## I.

In mid-2008, detectives from St. Louis County, Missouri investigated pharmacy log books of pseudoephedrine purchases in the St. Louis area. The log books and the ensuing investigation revealed that Hodge and a number of associates were purchasing large quantities of pseudoephedrine for the purpose of manufacturing methamphetamine. Hodge was arrested on August 1, 2008, and charged with (1) conspiracy to possess pseudoephedrine, knowing and having reason to believe it would be used to manufacture methamphetamine; (2) possession of pseudoephedrine, knowing and having reason to believe it would be used to manufacture methamphetamine; and (3) conspiracy to manufacture and distribute more than fifty grams of methamphetamine.

At trial, the government presented the testimony of Detective Joseph Smith, Sergeant Jason Grellner, and Detective James Vargas. Smith testified about the investigation of Hodge and his associates, the purchases of pseudoephedrine by this group of individuals, and the discovery of a methamphetamine production site. Grellner testified about the process of manufacturing methamphetamine, typical usage of methamphetamine, the effect of methamphetamine on the body, and the pharmacy log books that showed the pseudoephedrine purchases by Hodge and his associates. Vargas testified about the discovery of methamphetamine production sites based upon information provided by Hodge's associates. During Smith's and Grellner's testimony, the government introduced certified copies of pharmacy log books that showed Hodge and his associates had purchased 489.36 grams of pseudoephedrine between May 2006 and March 2007. Hodge was in the custody of the Missouri Department of Corrections from April 20, 2007, to March 27, 2008. During this time, his associates purchased 685.8 grams of pseudoephedrine. After Hodge was released from jail, he purchased 47.52 grams of pseudoephedrine, and his co-conspirator, Christina Dittmaier, purchased 31.68 grams.

Dittmaier, Kim Mercer, and Scott Skaggs, all co-conspirators, testified that Hodge cooked methamphetamine for himself and others at multiple locations using pseudoephedrine pills provided by various individuals between 2006 and 2008.

The government also introduced letters that Hodge had written to Dittmaier while in jail. The letters, using drug argot, included discussions of manufacturing and using methamphetamine. Hodge explained his strategy for minimizing his criminal liability, which relied primarily on misleading the police, not cooperating, and going to trial. Hodge encouraged Dittmaier not to assist the government, writing, "I'm saying this as a good [S]amaritan. Don't testify against me. If you do . . . and I am covering all my bases and trying to help you out, your credibility will be shot. . . . All right, baby girl, keep your head up and your mouth closed. I mean that." Tr. at 256-57.

Pursuant to Federal Rule of Evidence 404(b), the government introduced records of Hodge's previous convictions for methamphetamine related offenses. These records showed that in 2003 and 2004 Hodge had been convicted of possession of methamphetamine, possession of pseudoephedrine with intent to manufacture methamphetamine, and unlawful transportation of anhydrous ammonia, a methamphetamine manufacturing agent.

Following a three-day trial, the jury convicted Hodge on all three counts. The presentence investigation report (PSR) calculated a base offense level of 36, given that the amount of pseudoephedrine involved exceeded one kilogram. The PSR recommended a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, note 4(a), because Hodge had intimidated or unlawfully influenced a co-defendant, bringing the total offense level to 38. With a criminal history category of V, Hodge's sentence range under the guidelines was from 360 months to life imprisonment.

The district court denied Hodge's objection to the two-level enhancement, which was based on the argument that his letters had been misconstrued. Hodge requested a downward departure, arguing that the guidelines range was too severe given his criminal history and the circumstances of his case; he proposed a sentence of 188 months. In considering the factors set forth in 18 U.S.C. § 3553(a), the district court noted that Hodge's associates had received much more lenient sentences than what Hodge faced under the guidelines. The court concluded that a sentence of "30 years [was] too severe" and sentenced Hodge to the concurrent 240 month sentences mentioned above.

II.

A.

Hodge argues that the district court erred in denying his motion for judgment of acquittal; he asserts that the government's evidence was insufficient to establish his guilt. We review *de novo* the district court's denial of a motion for a judgment of acquittal. United States v. Tyndall, 521 F.3d 877, 881 (8th Cir. 2008), cert. denied, 129 S. Ct. 997 (2009). When considering a challenge to a conspiracy conviction based upon sufficiency of the evidence, "we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc).

According to Hodge, the government's case was insufficient because there was no direct evidence of an agreement to manufacture methamphetamine. In a drug conspiracy case, however, the government is not required to present direct evidence of an explicit agreement; juries may rely upon circumstantial evidence to discern a tacit agreement or understanding between the co-conspirators. United States v.

Coleman, 584 F.3d 1121, 1125 (8th Cir. 2009). There was overwhelming evidence at trial of a conspiracy to manufacture methamphetamine. Multiple witnesses corroborated what the pharmacy logs suggested: Hodge and his associates purchased large quantities of pseudoephedrine in order to manufacture methamphetamine. Hodge's associates supplied him with the ingredients necessary for manufacturing methamphetamine, and he in turn distributed the finished product to his associates. The iteration of this scheme was sufficient to establish that there was an agreement or understanding between Hodge and his associates to manufacture methamphetamine and that Hodge knew of this agreement or understanding. United States v. Davis, 471 F.3d 938, 947-48 (8th Cir. 2006) (finding a conspiracy to manufacture methamphetamine based upon the defendant's "voluntary acts").

Hodge also assails the credibility of the government's witnesses, arguing that (1) they gave inconsistent testimony, (2) they had an incentive to lie in order to reduce their sentences, and (3) they were unreliable because of their prior addiction to methamphetamine. A jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony. United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996); United States v. Anderson, 78 F.3d 420, 423 (8th Cir. 1996) ("As trier of fact, the jury ha[s] the best opportunity to observe the witnesses' facial expressions, attitudes, tone of voice, reactions to questions, and other behavior."). Only when credibility determinations are internally inconsistent, based upon incoherent or implausible testimony, or directly at odds with objective evidence is a more searching review warranted. United States v. Nolen, 536 F.3d 834, 844 (8th Cir. 2008); United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001).

The testimony of the witnesses contained minor inconsistencies and omissions. On the whole, however, it was entirely consistent with the government's allegations, the testimony of the other witnesses, and the objective evidence. The witnesses testified that they were cooperating with the government in hopes of receiving lower

-5-

sentences, and this was certainly relevant to the jury's credibility determination. United States v. Espino, 317 F.3d 788, 794 (8th Cir. 2003). The jury had the prerogative to credit or discount the government's witnesses based upon this cooperation, and the jury choose to believe the government's witnesses, notwithstanding the incentives in play. Id. The government's witnesses also testified frankly about their addictions and abuse of methamphetamine. Prior drug abuse may be relevant when the witness's memory or mental abilities are legitimately before the court. United States v. Cameron, 814 F.2d 403, 405 (7th Cir. 1987). Prior drug abuse or drug addiction, however, has no automatic effect on the credibility of a witness. In a drug conspiracy case, it is the jury's prerogative to evaluate the credibility of witnesses in light of their prior drug abuse or addiction. In this case, the jury found the government's witnesses credible, and we find no basis upon which to disturb this finding.

The record, viewed in the light most favorable to the government, contains substantial evidence supporting the jury's verdict. Accordingly, the district court did not err in denying Hodge's motion for judgment of acquittal.

B.

Hodge argues that the district court erred when determining his relevant conduct for the purpose of sentencing. He argues that he should not have been held accountable for the entire amount of pseudoephedrine that he and his associates purchased between 2006 and 2008 (approximately 1.189 kilograms) because he was incarcerated during part of this time and because the government's evidence attributing this amount to him was insufficient.

Hodge did not object to the amount of pseudoephedrine attributed to him at sentencing. To preserve an issue for appeal, a litigant must object in a timely manner. Puckett v. United States, 129 S. Ct. 1423, 1428 (2009). If the litigant does not do so,

his claim is usually forfeited. Id. There is a narrow exception, however, to this general rule: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Under review for plain error, the court conducts a four-fold inquiry: first, the court considers whether there was an error that the litigant did not affirmatively waive; second, the court determines whether the error was clear and obvious; third, the court adjudges whether the error affected the litigant's substantial rights, which usually means that the outcome would have been different had the error not occurred; and last, the court decides whether to exercise its discretion in remedying the error, a discretion usually reserved for those cases affecting the fairness, integrity or public reputation of the judicial proceedings. Puckett, 129 S. Ct. at 1429; United States v. Martin, 583 F.3d 1068, 1074 (8th Cir. 2009). Accordingly, we review Hodge's claim that the district court erred in determining the relevant drug quantities for plain error. United States v. Villareal-Amarillas, 454 F.3d 925, 930 (8th. Cir. 2006). Hodge bears the burden of proof to show that he is entitled to plain error relief. United States v. Marston, 517 F.3d 996, 1004 (8th Cir. 2008).

Hodge suggests that his incarceration attenuated or eliminated his responsibility for the actions of the conspiracy. He states that the evidence at trial showed that he had "no drug-related contact with any of his alleged co-conspirators during the time of his incarceration," Appellant's Br. 18, and he claims that there was insufficient evidence proving that there was an agreement to continue the conspiracy while he was incarcerated. He depicts the conspiracy as one involving "a large group of people [who] cooked methamphetamine at various locations for their own purposes," id., and this group of people continued to accumulate pseudoephedrine while he was incarcerated independent of any agreement or understanding that they had with him.

Although incarceration may constitute withdrawal from a conspiracy, it does not necessarily terminate an individual's liability for the actions of a conspiracy. United States v. Casares-Cardenas, 14 F.3d 1283, 1288 (8th Cir. 1994); United States

v. Cohen, 516 F.2d 1358, 1364 (8th Cir. 1975). Absent an affirmative act of withdrawal, a defendant remains liable for the actions of a conspiracy that were reasonably foreseeable. Caseras-Cardenas, 14 F.3d at 1288. "Actions are reasonably foreseeable to a defendant when they fall within the scope of the agreement between the defendant and the co-conspirators." Id. If a conspiracy is effected while the defendant is incarcerated and he has not withdrawn from the conspiracy, his responsibility is curtailed only if those acts were not reasonably foreseeable at the time of his incarceration. United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005); Cohen, 516 F.2d at 1364.

There was no evidence at trial that Hodge affirmatively withdrew from the conspiracy, and it was reasonably foreseeable that the conspiracy would continue while he was incarcerated. The continued purchase of pseudoephedrine by Hodge's associates while he was incarcerated did not exceed the scope of the conspiracy. Thus, attributing the entire amount of pseudoephedrine to Hodge was not clearly erroneous.

Hodge argues that there was insufficient evidence to establish the amount of methamphetamine that he produced. The government introduced log books showing the amount of pseudoephedrine used in the manufacturing process. Grellner testified as to how much methamphetamine could be produced from this amount of pseudoephedrine. The jury returned a special verdict finding that the amount of methamphetamine involved in the conspiracy exceeded fifty grams. The jury's finding was well supported by the evidence and not clearly or obviously wrong.

Even if Hodge could prevail on one of these points, his claim for relief would fail under plain error review because his sentence would likely have been the same even if the district court had computed the amount of drugs differently. Had Hodge been held accountable for only the 132 grams of pseudoephedrine that he purchased, his base offense level would have been 34, including a two-level enhancement for

obstruction of justice, resulting in a guidelines range of 235 to 293 months' imprisonment. U.S.S.G. § 2D1.11(d). Had Hodge been held accountable for the 568.56 grams of pseudoephedrine purchased when he was not incarcerated, his base offense level would have been 36, including a two-level enhancement for obstruction of justice, resulting in a guidelines range of 292 to 365 months' imprisonment. Id. A sentence of 240 months was within the guidelines range in the former calculation, and it would have been a significant downward departure in the latter. Hodge cannot show, therefore, that in either case his sentence would have been different.

III.

The judgment is affirmed.[2]

_____

---

[2]We have considered the arguments raised in Hodge's pro se supplemental brief and recently filed motion and find them to be without merit.